# TYRONE BUSH *v.* DIRECTOR, PATUXENT INSTITUTION

[No. 962, September Term, 1973.]

\* \* \*

# STANLEY EDWARD MAZAN *v.* DIRECTOR, PATUXENT INSTITUTION

[No. 963, September Term, 1973.]

*Decided August 8, 1974.*

The cause was argued before ORTH, C. J., and MORTON and GILBERT, JJ.

*John F. Fader, II* and *Leonard C. Redmond, III,* for appellants.

*Harry A. E. Taylor, Assistant Attorney General* and *Walter Timothy Seidel, Assistant State's Attorney for Baltimore City,* with whom were *Francis B. Burch, Attorney General* and *Milton B. Allen, State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Tyrone Bush and Stanley Edward Mazan, appellants, in separate trials in the Criminal Court of Baltimore, were determined to be defective delinquents within the meaning of Md. Ann. Code art. 31B, § 5. Bush was so found by a jury and Mazan by a judge sitting without a jury. Both Bush and Mazan sought leave to appeal from the orders entered on the separate verdicts. We, in two unreported per curiam

opinions,[1] filed February 21, 1974, granted leave to appeal, transferred the cases to the regular appeal docket and set them for hearing. Counsel for Bush and Mazan petitioned to consolidate the two appeals, and we granted the consolidation.[2]

Appellants argue:

1. They were ". . . denied due process of law by the application of the 'Preponderance of the Evidence' test by the lower court as the standard of proof to determine status as a defective delinquent."

2. They were ". . . denied equal protection of the law by the application of the 'Preponderance of the Evidence' test by the lower court as the standard of proof to determine status as a defective delinquent."

3. ". . . [T]he lower court erred in admitting evidence before the jury by the witness for Patuxent Institution outlining the purpose and goals of that institution, the methods of treatment, the types of education and job training and the success of the institution in correcting the recividist problem."

## I.

The thrust of the appellants' argument with regard to their first contention is that defective delinquency cases, because of the statutory provision relative to confinement, are more like criminal proceedings than civil cases. Bottoming their asseveration on what they presume to be the soundness of their position, they assert that the State should be required to demonstrate the defective delinquency of a person "beyond a reasonable doubt" or at the very least by "clear and convincing evidence". The civil case rule of "preponderance of the evidence", appellants aver, should be

---

1. "Application for Leave to Appeal", No. 138 and No. 140, September Term, 1973.
2. Order of this Court by Chief Judge Orth dated May 6, 1974.

jettisoned. Appellants build their argument upon the majority's dicta in *Tippett v. Maryland,* 436 F. 2d 1153 (C.A.4, 1971), a concurring-dissenting opinion in the same case, 436 F. 2d 1159, the dissenting opinion of Mr. Justice Douglas in *Murel v. Baltimore City Criminal Court,* 407 U. S. 355, 92 S. Ct. 2091, 32 L.Ed.2d 791 (1972), and an analogy with *In Re Gault,* 387 U. S. 1, 87 S. Ct. 1428, 18 L.Ed.2d 527 (1967) and *In Re Winship,* 397 U. S. 358, 90 S. Ct. 1068, 25 L.Ed.2d 368 (1970).

In *Tippett* the author of the majority opinion said at 1158:

" . . . We might all be happier had it [the burden of persuasion] been stated in terms of clear and convincing proof rather than in terms of a preponderance of the evidence."

The Court went on, however, to note that:

"In any event, in the present state of our knowledge, choice of the standard of proof should be left to the state . . . .

Since the Act's [Md. Ann. Code art. 31B] provision for judicial review of a defective delinquent's initial commitment to Patuxent and his continued confinement there are adequate, we conclude that the Constitution does not require that the procedures under the Act be treated as if they were criminal proceedings subject to the self-defeating strictures which the Constitution appropriately throws around the shoulders of defendants facing criminal charges in adversary legal proceedings."

We think it clear that the *Tippett* Court, while expressing a precatory utterance of what that Court may have wished the standard of proof to be in defective delinquency cases, nevertheless, recognized that Maryland is free to set its own standard. *Tippett,* in our view, also makes it apparent that the Constitution does not require that defective delinquency proceedings be treated the same as criminal cases, with their concomitant standard of proof.

Judge Soboloff in a concurring-dissenting opinion in the same case, *i.e., Tippett, supra,* stated that he "would hold" that due process "requires that the State shall establish by at least 'clear and convincing evidence' that the individual is a defective delinquent." We observe that Judge Soboloff's opinion is not the majority holding, and, although we think that his point of view is entitled to great respect, we, nevertheless, reject the above quoted portion of it.

The Supreme Court of the United States in *Murel, supra,*[3] a per curiam opinion, dismissed a Writ of Certiorari after having at first issued it. The Court reasoned that the statutes governing civil commitment in this State were undergoing "a substantial revision", and that it was an "inopportune time" for the Court "to consider a comprehensive challenge to the Defective Delinquency Law." Mr. Justice Douglas, however, dissented. He said:

> "When a State moves to deprive an individual of his liberty, to incarcerate him indefinitely, or to place him behind bars for what may be the rest of his life, the Federal Constitution requires that it meet a more rigorous burden of proof than that employed by Maryland to commit defective delinquents. The Defective Delinquency Law does not specify the burden of proof necessary to commit an individual to Patuxent, but the Maryland Court of Appeals has determined that the State need only prove its case by the 'fair preponderance of the evidence.' *E.g., Crews v. Director,* 245 Md. 174, 225 A. 2d 436 (1967); *Termin v. Director,*[4] 243 Md. 689, 221 A.2d 658 (1966); *Dickerson v. Director,* 235 Md. 668, 202 A. 2d 765 (1964); *Purks v. State,* 226 Md. 43, 171 A. 2d 726 (1961); *Blizzard v. State,* 218 Md. 384, 147 A. 2d 227 (1958); and see *Sas v. Maryland,* 334 F. 2d 506 (CA4 1964); *Walker v. Director,* 6 Md. App. 206, 250 A. 2d 900 (1969). Petitioners have

---

3. *Sub. nom* Tippett v. Maryland, *supra.*
4. Termin v. Director, *supra,* does not so hold. It merely says that ". . . the burden of proof is on the State and not on the applicant."

thus been taken from their families and deprived of their constitutionally protected liberty under the same standard of proof applicable to run-of-the-mill automobile negligence actions." (Footnote omitted).

We are unpersuaded by Mr. Justice Douglas's dissent. We point out that a defective delinquency proceeding is not a criminal case. An individual who is found to be a defective delinquent is not taken from his family and deprived of his liberty on the basis of the same standard of proof used to determine "run-of-the-mill" motor torts. On the contrary, the individual has been "taken from [his] family and deprived of [his] . . . liberty" as the result of a prior criminal trial wherein the standard of proof was "guilt beyond a reasonable doubt". It is only the commitment to Patuxent Institution for treatment that requires proof, by a preponderance of the evidence, of the individual's meeting of the statutory definition [5] of a defective delinquent.

Moreover, a defective delinquency proceeding may not arise until the individual has first been adjudicated guilty of one of the criminal offenses enumerated in Md. Ann. Code art. 31B, § 6 (a), and the individual is not found "guilty" of being a defective delinquent. The Defective Delinquency Act is Maryland's answer to the ever-increasing volume of crime committed by persons who are not insane within the meaning of Md. Ann. Code art. 59, § 9 (a), and *Sherrill v. State*, 14 Md. App. 146, 286 A. 2d 528 (1972), but who, nevertheless, suffer from "intellectual deficiency or emotional unbalance, or both," Md. Ann. Code art. 31B, § 5, and are "an actual danger to society so as to require such confinement and treatment. . . ." *See Director v. Daniels*, 243 Md. 16, 30-31, 221 A. 2d 397 (1966).

When the Defective Delinquent Act was adopted in Maryland, Laws 1951, Ch. 476, § 11 thereof provided:

"(Appeal) From any court order issued under the provisions of section 9, or of section 10, there shall

5. Md. Ann. Code art. 31B, § 5.

be the same right of appeal to the Court of Appeals *as after any conviction of felony."* (Emphasis supplied).

In 1957 the Legislature amended § 11 by striking out the words "as after any conviction of felony" and substituting in lieu thereof *"as in other civil proceedings".* See Laws 1957, Ch. 558. The statute was again amended by Laws 1960, Ch. 43. The phrase "as in other civil proceedings" was deleted and § 11 was changed to read in substantially the same form as is now embodied in Md. Ann. Code art. 31B, § 11. Even though the General Assembly deleted the words "as in other civil proceedings", we think it undeniable that they intended that the nature of defective delinquency proceedings be civil rather than criminal. This is so because the Legislature is presumed to be cognizant of the opinions of the appellate courts. *Director v. Cash*, 269 Md. 331, 305 A. 2d 833 (1973); *Creaser v. Owens*, 267 Md. 238, n. 4, at 240, 297 A. 2d 285 (1973); *Stack v. Marney*, 252 Md. 43, 248 A. 2d 880 (1969); *Gibson v. State*, 204 Md. 423, 104 A. 2d 800 (1954); *Herbert v. Grey*, 38 Md. 529 (1873). Consequently, they are presumed to know that the decisions of the Court of Appeals and this Court have repeatedly stated that defective delinquency proceedings are civil cases. *See* n. 7 *infra.* The General Assembly has met at least annually in the City of Annapolis since the Court of Appeals first applied the "civil case" standard to Laws 1960, § 11, but it has not seen fit to alter the statute in any material manner.[6]

To analogize *Gault* and *Winship* with a defective delinquency case, we think, requires a strained construction both of *Gault* and *Winship.* In those two cases the Supreme Court was concerned, *inter alia,* with the standard of proof required at the adjudicatory stage of a juvenile delinquency proceeding. Even though such proceedings are "civil" in nature, the adjudicatory stage is the "guilt stage". The Court held that the proof "beyond a reasonable doubt" standard was applicable. This is so because they were dealing with the

---

6. Two minor changes have occurred. The name of this Court was substituted for that of the Court of Appeals, and redundant language was stricken from the last sentence of § 4, Laws 1966, Ch. 12.

"guilt stage", and the juvenile charged with being a delinquent is entitled to receive the same protection as an adult charged with a criminal offense. A defective delinquency hearing, on the other hand, follows the "guilt stage" of a criminal trial. It may only come into being: (1) *after* the individual has been adjudicated guilty of one of the named offenses found in Md. Ann. Code art. 31B, § 6 (a), *Monroe v. Director*, 227 F. Supp. 295 (D. Md. 1964); (2) *after* the individual has been diagnosed as a defective delinquent by the Patuxent Staff. The Defective Delinquency Act is not a penal statute. *State v. McCray*, 267 Md. 111, 297 A. 2d 165 (1972).

We observe no denial of due process in requiring a lesser standard of proof for determination of defective delinquency than that mandated for the "guilt stage" of either a juvenile proceeding or a criminal trial.

We decline to depart from the holdings of the plethora of cases of the Court of Appeals and this Court that have stated repeatedly that a defective delinquency proceeding is civil in nature,[7] and that the standard of proof required for such a determination is a preponderance of the evidence.[8]

## II.

Appellants next argue that because "the standard used to commit . . . appellants under Article 31B of the Maryland Code is lower than the standard used to involuntarily commit persons to other mental health facilities under Article 59 of the Maryland Code and its associated regulations", appellants are denied the equal protection of

---

**7.** *See:* Mastromarino v. Director, 244 Md. 645, 224 A. 2d 674 (1966); Director v. Daniels, *supra*; Krs v. Director, 230 Md. 646, 187 A. 2d 871 (1963); Bullock v. State, 230 Md. 280, 186 A. 2d 888 (1962); McDonough v. Director, 229 Md. 626, 183 A. 2d 368 (1959); Meredith v. Director, 226 Md. 653, 172 A. 2d 501 (1961); Roberts v. Director, 226 Md. 643, 172 A. 2d 880 (1961); Purks v. State, *supra*; Blizzard v. State, *supra*; Eggleston v. State, 209 Md. 504, 121 A. 2d 698 (1956); Savage v. State, 19 Md. App. 1, 308 A. 2d 701 (1973); Sorrell v. Director, 12 Md. App. 509, 280 A. 2d 70 (1971); Long v. Director, 8 Md. App. 627, 261 A. 2d 819 (1970); Walker v. Director, *supra*.

**8.** *See, e.g.,* Crews v. Director, *supra*; Dickerson v. Director, *supra*; Purks v. State, *supra*; Blizzard v. State, *supra*; Walker v. Director, *supra*.

the laws that has been guaranteed to them by the Constitution.

As we have previously stated, the standard of proof required for commitment to Patuxent, under Md. Ann. Code art. 31B, is a preponderance of the evidence. Md. Ann. Code, Mental Hygiene Law, art. 59, § 6 confers upon the Secretary of Health and Mental Hygiene the authority to "make such rules and regulations for the administration of [the Mental Hygiene] article and for the operation and administration of the Department [of Mental Hygiene] as are needed."

Acting pursuant to the authority granted by § 6 the secretary promulgated Regulation 10.04.03, effective December 5, 1970. Section .01 of that Regulation provides:

> "These regulations shall apply to every patient whose admission is sought to be effected, on an involuntary basis, to any mental health facility licensed by or under the jurisdiction of the Department of Health and Mental Hygiene, provided, however, that these regulations shall not apply to institutions for the care of mentally retarded patients."

Section .03 G requires that every patient who is involuntarily confined to a mental health facility is to "be afforded a hearing" within a specified relatively short period of time. "At such a hearing, in order to justify admission or retention of the patient, it must be affirmatively shown by *clear and convincing evidence*" (emphasis supplied) that the patient is suffering from a mental disorder, is in need of inpatient care or treatment and is a danger to his own life and safety or that of others.[9]

Appellants see something constitutionally invidious in the preponderance of evidence rule followed by the Court of Appeals and this Court in defective delinquency proceedings, *vis a vis* the regulations of the Secretary of Health and

---

**9.** *See* Neil Solomon, *"Involuntary Commitment and Due Process: The New Maryland Regulations"*, 3 Md. L. Forum 115 (1973).

Mental Hygiene pertaining to the clear and convincing standard of proof required for involuntary confinement in one of the mental health facilities. Appellants aver that what they see is a violation of the equal protection clause of the Constitution.[10] We, however, perceive no denial of equal protection under the law. There are vital differences between the Secretary's regulations and Md. Ann. Code art. 31B, "Defective Delinquency". We illustrate in tabular form some of those differences.

### TABLE OF COMPARISON

| Article 31B | Mental Health Regulation 10.04.03 Pursuant to Article 59. |
| --- | --- |
| Court trial with choice of jury or non-jury. | Administrative hearing. |
| Right of discovery. | Not provided. |
| Entitled to examination by psychiatrist of own choosing at State expense. | Not provided. |
| Criminal convictions, court referral for examination and evaluation; by psychiatrist, medical doctor and psychologist; conclusion of majority of experts as to defective delinquency. | Certification of two medical doctors. |

A perusal of the above comparison table makes it crystal clear that an alleged defective delinquent is not denied equal protection of the law.

A person who is referred to a mental health facility has not been convicted of a crime. He is, at most, alleged to be suffering from some mental disorder. Md. Ann. Code art. 59, § 12 (a) (1). In order to assure that individuals committed

---

10. The Fourteenth Amendment, Section 1.

involuntarily to mental health facilities are actually suffering from a mental disorder, the Secretary has adopted such rules as he thinks will preclude the possibility of a person who does not suffer from mental disorder from being detained in a mental health facility.

We observe that Md. Ann. Code art. 59, § 15 sets forth the procedure for an appeal to the courts from the decision of the Department of Health and Mental Hygiene. Section 15 provides in pertinent part:

> "(a) *Petition to be filed; respondent.* — Any patient may, at any time, . . . file a petition in the equity court of the county in which he resides or resided at the time of his admission, or in which he is confined for the purpose of securing his release. . . . The Department shall be the respondent in any such case, unless the patient is a patient in a private facility or Veterans' Administration hospital, in which case the private facility or Veterans' Administration hospital shall be named as the respondent.
>
> * * *
>
> (c) *Trial by jury.* — The petitioner may request that his petition be heard by a jury, and thereafter, *such trial shall proceed as in a civil action at law.*
>
> * * *
>
> (e) *Appeals.* — *Appeals may be taken from decisions or petitions as in any other equity cases* and may be taken by the petitioner or the respondent." (Emphasis supplied).

We think it unmistakable that the Legislature meant that in any judicial proceeding arising out of Md. Ann. Code art. 59, § 15 that the courts employ the civil case rules in conducting such a hearing, be it jury or non-jury. Ordinarily, a case heard in any equity court or civil action at law requires only the preponderance of evidence standard. Had the Legislature intended a greater degree of proof, it would have said so. It is apparent, therefore, that even though the

Secretary requires his departmental hearing officers to ascertain by "clear and convincing evidence" that an individual is: (1) suffering from a mental disorder, (2) in need of in-patient care or treatment, and (3) a danger to himself or others, that, when a patient files a petition in court, the standard then employed is not "clear and convincing evidence", but rather a "preponderance of the evidence". While it is somewhat of an anomaly to have a higher standard of proof required in an administrative hearing than that used by the Courts on appeal in the same case, nevertheless, by virtue of the Secretary's adoption of the "clear and convincing standard", that is exactly the situation that has developed.

The Secretary's election to utilize the standard of "clear and convincing evidence" in his Department's administrative hearings does not affect the standard used by the Courts in other proceedings, nor may the Secretary's administrative rules, in the absence of a clear legislative intent to the contrary, supersede the decisions of the Court of Appeals or this Court.

We cannot conceive of a court's holding that an administrative regulation, requiring a standard of proof different from that required by the courts in similar cases, is tantamount to a denial by the State of equal protection of law where the court standard complies with constitutional minimum standards. If such were the case, then, hypothetically, a State agency, authorized to adopt rules and regulations, could determine that in all hearings before it the standard of proof required to establish guilt would be more than "beyond a reasonable doubt", *i.e.*, proof of "guilt to a mathematical certainty". It would follow that the State in all criminal cases would be required to scrap the present standard of proof beyond a reasonable doubt and to substitute therefor proof of guilt to a mathematical certainty. Otherwise, the State would subject itself to attack on the theory of denial of equal protection.

The equal protection clause of the Constitution does not require that all persons be dealt with in identical fashion. Just as ". . . the State may treat capital offenders differently

without violating the constitutional rights of those charged with lesser crimes . . .", *Johnson v. Louisiana,* 406 U. S. 356, 92 S. Ct. 1620, 32 L.Ed.2d 152 (1972); *Gibson v. State,* 17 Md. App. 246, 300 A. 2d 692 (1973), so may it treat defective delinquency differently than it does those who are *non compos mentis.* The test is whether there is a rational basis for the distinction. *McGinnis v. Royster,* 410 U. S. 263, 93 S. Ct. 1055, 35 L.Ed.2d 282 (1973).[11] We think the "rational basis" for the distinction between defective delinquents and those suffering from a mental disorder is clearly set forth by Judge Winters in *Monroe v. Director, supra.* The Judge rejected an "equal protection" attack upon the Defective Delinquency Law grounded on the fact that defective delinquents are not eligible for parole. He said at 303:

> "The short answer to such an argument is that when a person has committed a crime and is found to be deficient in either the intellectual or emotional qualities, or both, and to possess the other opprobrious qualities which render him a defective delinquent, *it is not unreasonable for the legislature to treat him differently from the criminal not a defective delinquent, or the incompetent not a criminal.*" (Emphasis supplied).

The late Chief Justice Warren, writing for the Court [12] in *Baxstrom v. Herold,* 383 U. S. 107, 86 S. Ct. 760, 15 L.Ed.2d 620 (1966) said at 110:

> "We hold that petitioner was denied equal protection of the laws by the statutory procedure under which a person may be civilly committed at the expiration of his penal sentence without the jury review available to all other persons civilly committed in New York."

---

11. *See* Note — *"Mental Illness: A Suspect Classification?",* 83 Yale L. J. 1237, 1239 (1974). "In general, the Supreme Court, as ultimate arbiter of state compliance with the Equal Protection Clause, leaves state legislatures free to classify imperfectly to serve legitimate goals as long as the classification bears a rational, or plausible, relation to those goals."

12. Mr. Justice Black, without stating his reasons, concurred in the result.

The Court in *Baxstrom* noted that those persons "other than those committed at expiration of a penal term" were granted a right to review by a jury trial. The Court stated that there was "no conceivable basis for distinguishing the commitment of a person who is nearing the end of a penal term from all other civil commitments." Unlike the facts in *Baxstrom*, Maryland does not deprive those alleged to be defective delinquents of their constitutional right to a jury trial, nor does it, at the court stage, require a lesser degree of proof than it does for those alleged to be in need of treatment as the result of a mental disorder.

The Court of Appeals of Maryland, in *Director v. Daniels*, *supra*, pointed out the distinction between defective delinquents and those who are *non compos mentis*. Chief Judge Hammond for the Court said at 30-31:

> "Within the larger group of violators of the criminal law whose criminality is related to or results from mental abnormalities, it has long been recognized that there, in fact, exists a smaller group who are legally sane (under the M'Naghten, Durham or other accepted tests for sanity in criminal cases) and therefore responsible for their acts but who nevertheless persist in antisocial behavior, have either deficient intellect or emotional unbalance, or both, and are lacking in control. . . ."

Chief Judge Hammond went on to say:

> "That this state has the power to restrain the liberty of persons found to be dangerous to the health and safety of the community is clear if the restraint is founded upon a legislative enactment providing a definite and certain description of a recognized group of persons dangerous to the health and safety of the people which is susceptible of ascertainment by proof. Legislation meeting this test does not violate the 'due process' and 'equal protection' clauses of the Fourteenth Amendment of the Federal Constitution. *Jacobson v.*

*Massachusetts,* 197 U. S. 11, 49 L. Ed. 643, 25 S. Ct. 358 (1905); *Buck v. Bell,* 274 U. S. 200, 71 L. Ed. 1000, 47 S. Ct. 584 (1927); *Eggleston v. State, supra.* This was the conclusion also reached by the Fourth Circuit Court in *Sas v. Maryland, supra,* when Judge Bell stated at page 509:

> '. . . it is within the power of the state to segregate from among its lawbreakers a class or category which is dangerous to the public safety and to confine this group for the purpose of treatment or for the purpose of protecting the public from further depredations.' "

Maryland's election to treat those persons alleged to be insane differently from those alleged to be defective delinquents does not violate the equal protection rights of the defective delinquent. *Minnesota v. Probate Court,* 309 U. S. 270, 60 S. Ct. 523, 84 L.Ed. 744 (1939); *State v. Roberson,* 222 Md. 518, 161 A. 2d 441 (1960); *Eggleston v. State, supra.*

As the Supreme Court declared in *Baxstrom, supra,* 383 U. S. at 111, "[e]qual protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." Both alleged defective delinquents and civilly committed mental patients are confined pursuant to procedures which satisfy constitutional standards. The procedures are concededly not identical, but as *Baxstrom* indicates, equal protection of the laws does not require that procedures be identical; rather they must be constitutionally, equally protective. We reject the notion that mathematically precise equality of procedures, or absolute symmetry, is the command of the Fourteenth Amendment. In short, we agree with what Mr. Justice Douglas said in *Norvell v. Illinois,* 373 U. S. 420, 423, 83 S. Ct. 1366, 10 L.Ed.2d 456, 459 (1963), when he penned: "Exact equality is no prerequisite of equal protection of the laws within the meaning of the Fourteenth Amendment."

### III.

Bush's third contention strikes at the type of interrogation

conducted by the Assistant State's Attorney, over Bush's objection. The questions posed to the State's witness were obviously calculated to demonstrate the therapeutic value of the treatment given to inmates at Patuxent Institution, the purpose of Patuxent, its goals, educational opportunities, job training programs, and its success with respect to the recidivism problem. In his brief in this Court the Attorney General candidly stated that he "deplores either putting Patuxent on display or on trial . . . ; whether Patuxent is a psychiatric paradise or the black hole of Calcutta is here irrelevant to the sole issue of . . . defective delinquency. Therefore, the appellee concedes that the questions and answers complained about by the appellant were not relevant or germane to the issue of defective delinquency." Nevertheless, the State argues that the admission of the irrelevant evidence was harmless because at the conclusion of the evidence the jury was instructed:

> " . . . [Y]our deliberation should be on the sole issue in this case, that is whether . . . [Bush] meets the definition of being a defective delinquent as defined by law."

To bolster its assertion that the error was harmless the State relies upon *Hall v. Director*, 245 Md. 687, 226 A. 2d 669 (1967) wherein the Court of Appeals said at 690:

> "We think the defendant was not prejudiced by the judge informing the jury that the defendant would receive treatment if sent to Patuxent, since treatment is expressly contemplated under Article 31B, section 5. As the . . . instructions show, the jury was plainly told that its sole function was to decide the question before it, *i.e.*, 'whether or not this man . . . is a defective delinquent.' "

We find *Hall v. Director, supra,* to be inapposite. The oral examination, in the instant case, of the State's witness went far beyond a mere statement concerning treatment.

The Assistant State's Attorney who tried this case in the Criminal Court was dissatisfied with the brief of the

Attorney General and appeared in this Court. He argued the correctness of his examination of the witness. We were informed that the questions employed were designed "to sell" Patuxent to the jury. We were further advised that prior to the use of the marketing technique devised by the Assistant State's Attorney that his success in defective delinquency proceedings was negligible, but that since he began the "hard sell" method, such as employed in the case now before us, he has achieved a higher degree of success. Such an argument surely underscores the differences between the instant case and *Hall v. Director, supra,* and points out that the irrelevant questioning cannot be deemed to be harmless. On the contrary, argument made by the Assistant State's Attorney emphasized the fact that such questioning was highly prejudicial and deprived appellant of a fair and impartial hearing. While we commend the Assistant State's Attorney's zeal, we caution that blind or badly regulated zeal, even in advocacy, may encroach upon the rights of others. *Little v. Duncan,* 14 Md. App. 8, 284 A. 2d 641 (1972). In this case the prosecutor's zeal did trespass upon Bush's rights and that trespass requires us to reverse.

> *Judgment as to appellant Mazan, affirmed.*
> *Judgment as to appellant Bush, reversed and matter remanded for a new hearing.*