# JOHN W. WHEELER *v.* STATE OF MARYLAND

[No. 725, September Term, 1976.]

*Decided March 16, 1977.*

The cause was argued before GILBERT, C. J., and MENCHINE and MOORE, JJ.

*Burton W. Sandler* for appellant.

*Bruce C. Spizler, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Robert Hedeman, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

A jury in the Criminal Court of Baltimore, presided over by Judge Solomon Liss,[1] decided that the magazine entitled "Linda Lovelace, the Star of Deep Throat" was, under contemporary community standards, obscene. In so doing, the jury convicted John W. Wheeler of violating Md. Ann. Code art. 27, § 418, and Judge Liss imposed a fine upon Wheeler of five hundred dollars ($500).

Wheeler has appealed to this Court where he challenges the constitutionality of section 418 on equal protection grounds, and he also contends that the evidence was insufficient to sustain the conviction because there was no showing of scienter on the part of Wheeler.

The factual situation giving rise to this case was simple and straightforward. A detective of the Baltimore City Police Department entered an "adult book store" known as "Swingers Life, Inc.," located in the 1300 block of North Charles Street in Baltimore City where he purchased at random, a copy of the magazine. The detective paid $5.20 to Wheeler, the only employee in the store. Wheeler, who was behind a "podium-type" counter, placed the magazine in a paper bag and handed it to the detective. The detective testified that he did not open the magazine nor look at it until it was delivered to a District Court judge. That judge reviewed it and issued a warrant for Wheeler's arrest for unlawfully distributing obscene material. The detective

---

1. Qualified as an Associate Judge of this Court, July 9, 1976.

further stated that he was attracted to the publication by its cover, which indicated clearly, as we have said, that it was concerned with Linda Lovelace.[2] At trial, the State, at the conclusion of the detective's testimony, placed the magazine into evidence without objection.

We shall not endeavor to describe in explicit detail the content of the magazine.[3] Suffice to say that it contained a number of color and black and white photographs of various acts of fellatio, cunnilingus, coitus, and lesbianism, as well as sexual acts being committed by "threesomes." Weighed by sheer number, "threesomes" and fellatio are the prevalent themes.

The defense testimony was limited to that of Dr. Lawrence Donner, Associate Professor of Clinical Psychology at the University of Maryland School of Medicine. Doctor Donner told the jury that in his view the magazine did not appeal to "prurient interest." He gave the legal definition of prurient interest as ". . . a secret, morbid, shameful interest in sex, nudity or excretion . . ." while denying that there was a medical definition for that expression. Moreover, Doctor Donner was of the opinion that the magazine did "not lack serious literary value." That "[w]hat is food to one, is to others bitter poison"[4] is apparent from the jury's verdict which did find the publication to be obscene.

## THE CONSTITUTIONAL ISSUE

Wheeler perceives something invidious in the Legislature's exempting employees of a motion picture establishment from criminal accountability for the showing of an obscene film but not excluding employees of a bookstore from the scope of criminal sanctions.

---

2. Miss Lovelace became well-known because of her participation in the controversial motion picture "Deep Throat."

3. While some may describe it as "earthy," we view it as "mud."

4. Lucretius [Titus Lucretius Carus], *De Rerum Natura,* Book IV, p. 637 (C. Bailey trans.).

D.H. Lawrence in *Pornography and Obscenity* 5 (1929) stated it another way: "What is pornography to one man is the laughter of genius to another."

With Wheeler's contention in mind, we shall examine the relevant statutes. Md. Ann. Code art. 27, § 418, under which Wheeler was convicted, provides:

"Every person who knowingly sends or causes to be sent, or brings or causes to be brought, into this State for sale or distribution, or in this State prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor."

Section 417 states in pertinent part:

"As used in this subtitle,

(1) *'Matter'* means any book, magazine, newspaper, or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statue or other figure, or any recording, transcription or mechanical, chemical or electrical reproduction or any other articles, equipment, machines or materials.

(2) *'Person'* means any individual, partnership, firm, association, corporation, or other legal entity, *but shall not be construed to include an employee of any individual, partnership, firm, association, corporation, or other legal entity operating a theatre which shows motion pictures if the employee is not an officer thereof or has no financial interest therein other than receiving salary and wages.*

(3) *'Distribute'* means to transfer possession of, whether with or without consideration." (Emphasis supplied.)

Wheeler reasons that there is no rational basis for the legislative distinction between employees of bookstores and employees of theatres which show motion pictures.

The test which statutes must pass was stated in *Reed v.*

*Reed,* 404 U. S. 71, 75-76, 92 S. Ct. 251, 253-54, 30 L.Ed.2d
225, 229 (1971), where Mr. Chief Justice Burger, writing for
the Court, said:

> "In applying . . . [the Equal Protection C]lause,
> this Court has consistently recognized that the
> Fourteenth Amendment does not deny to States the
> power to treat different classes of persons in
> different ways. *Barbier v. Connolly,* 113 U.S. 27
> (1885); *Lindsley v. Natural Carbonic Gas Co.,* 220
> U.S. 61 (1911); *Railway Express Agency v. New
> York,* 336 U. S. 106 (1949); *McDonald· v. Board of
> Election Commissioners,* 394 U.S. 802 (1969). The
> Equal Protection Clause of that amendment does,
> however, deny to States the power to legislate that
> different treatment be accorded to persons placed
> by a statute into different classes on the basis of
> criteria wholly unrelated to the objective of that
> statute. A classification 'must be reasonable, not
> arbitrary, and must rest upon some ground of
> difference having a fair and substantial relation to
> the object of the legislation, so that all persons
> similarly circumstanced shall be treated alike.'
> *Royster Guano Co. v. Virginia,* 253 U.S. 412, 415
> (1920)."

There is nothing in the Equal Protection Clause of the
Constitution of the United States that mandates that all
persons must be dealt with identically. *Baxstrom v. Herold,*
383 U. S. 107, 86 S. Ct. 760, 15 L.Ed.2d 620 (1966). Indeed, as
the late Mr. Justice Frankfurter observed in his dissenting
opinion *Dennis v. United States,* 339 U. S. 162, 184, 70 S. Ct.
519, 526, 94 L. Ed. 734, 749 (1950), ". . . there is no greater
inequality than the equal treatment of unequals." What the
Equal Protection Clause does command, however, is that
distinction between classes of persons must ". . . have some
relevance to the purpose for which the classification is
made." *Baxstrom v. Herold, supra* at 111, 86 S. Ct. at 763, 15
L.Ed.2d at 624. *See also Bush v. Director,* 22 Md. App. 353,
367, 324 A. 2d 162, 171, *cert. denied,* 272 Md. 745 (1974). The

law is, as Mr. Justice Douglas penned in *Norvell v. Illinois,* 373 U. S. 420, 423, 83 S. Ct. 1366, 1368, 10 L.Ed.2d 456, 459 (1963), that, "Exact equality is no prerequisite of equal protection of the laws within the meaning of the Fourteenth Amendment."

In *McGowan v. Maryland,* 366 U. S. 420, 425-26, 81 S. Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961), *aff'g McGowan v. State,* 220 Md. 117, 151 A. 2d 156 (1959), the Court said:

> "Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

*See also Matter of Trader,* 272 Md. 364, 386-87, 325 A. 2d 398, 410 (1974).

Applying the test of *Reed* and *McGowan* to the instant case, we note that in a motion picture theatre there is not ordinarily any necessity for an employee, except the projectionists, to handle the film. In fact, it is highly doubtful that anyone other than the projectionist comes in contact with the film itself, and even his contact is limited. A seller of books and magazines can hardly make a sale without in some manner coming into physical contact with the item sold. Furthermore, while controls may be placed so as to regulate the age of all who enter the theatre to see the film, no such controls are present when obscene material, such as the magazine in the instant case, is once removed from the seller's premises. Patently, it is unlikely that a film will be transported from the motion picture establishment so as to become available for viewing by juveniles.

The legislature is afforded the widest discretion in determining which evil it seeks to ferret out of society. It may attack some and let others stand, recognizing that an assault mounted on a broad front against all evil might fall short, while a cannonade directed toward a smaller manifestation of evil would meet with more success. Such judgment on the part of a legislative body ". . . is given the benefit of every conceivable circumstance which might suffice to characterize the classification as reasonable rather than arbitrary and invidious." *McLaughlin v. Florida,* 379 U. S. 184, 191, 85 S. Ct. 283, 288, 13 L.Ed.2d 222, 228 (1964). *See also Bowie Inn v. City of Bowie,* 274 Md. 230, 335 A. 2d 679 (1975); *Bush v. Director, supra.*

We think section 418 to be constitutional in that there is a rational basis for the legislative distinction between employees of bookstores and employees of motion picture theatres. So long as there is a rational basis for the distinction, the statute is valid. *Eisenstadt v. Baird,* 405 U. S. 438, 92 S. Ct. 1029, 31 L.Ed.2d 349 (1972); *Dandridge v. Williams,* 397 U. S. 471, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970); *Prince George's County v. McBride,* 268 Md. 522, 302 A. 2d 620 (1973); *Administrator v. Vogt,* 267 Md. 660, 299 A. 2d 1 (1973). *Giant of Maryland, Inc. v. State's Attorney,* 267 Md. 501, 298 A. 2d 427, *appeal dismissed,* 412 U. S. 915, 93 S. Ct. 2733, 37 L.Ed.2d 141 (1973), *appeal after remand,* 274 Md. 158, 334 A. 2d 107 (1975); *Bush v. Director, supra; Hughes v. State,* 14 Md. App. 497, 287 A. 2d 299, *cert. denied,* 409 U. S. 1025, 93 S. Ct. 469, 34 L.Ed.2d 317 (1972); *Dean v. State,* 13 Md. App. 654, 285 A. 2d 295 (1971).

We repeat what Chief Judge Murphy said for the Court of Appeals in *Matter of Trader, supra* at 399, 325 A. 2d at 416-17:

> "Of course, in evaluating challenges under the equal protection clause, we do not sit as a 'super legislature or a censor.' *Salsburg v. Maryland,* . . . 346 U.S. at 550. . . . 'To be able to find fault with a law is not to demonstrate its invalidity. It may seem unjust and oppressive, yet be free from judicial interference. The problems of government

are practical ones and may justify, if they do not require, rough accommodations, — illogical, it may be, and unscientific.' *Metropolis Theatre Co. v. City of Chicago*, 288 U. S. 61, 69-70, 33 S. Ct. 441, 443, 57 L. Ed. 730 (1913). In other words, if legislation is constitutional, the wisdom of it is beyond the purview of the Courts. *Bruce v. Director, Chesapeake Bay Aff.*, 261 Md. 585, 276 A. 2d 200 (1971)."

Moreover, as in *Trader*, there is nothing in the record before us to show that legislative distinction between employees of theatres, section 417 (2), and of other business establishments, section 418, is arbitrary, unreasonable, discriminatory, or unrelated to a valid State objective. The ". . . constitutionality is presumed in the absence of a clear and convincing showing by the party assailing the legislative classification that it does not rest upon *any* reasonable basis, but is essentially arbitrary." *Matter of Trader, supra*, 272 Md. at 400, 325 A. 2d at 417. Wheeler did no more than point to the phraseology of sections 417 and 418 and concluded that on their face they denied equal protection. On their face, they do not, for the reasons we have already stated.

Arguments of counsel that statutes discriminate are not evidence of unlawful discrimination. Wheeler failed to show by clear and convincing evidence that there is no rational basis for the difference in treatment between section 417 and section 418.

We hold, on the basis of the record before us, that Wheeler was not denied equal protection of the law, and that Md. Ann. Code art. 27, § 418 is constitutional.

### SCIENTER

Judge Moylan, for this Court in *Woodruff v. State*, 11 Md. App. 202, 273 A. 2d 436 (1971), made clear that in order for a conviction under section 418 to be sustained, scienter on the part of the accused must be shown by the State. Such knowledge may, however, be either direct or indirect, and general as well as specific. There is no requirement that the

State undertake the impossible by endeavoring to prove that a defendant in an "... obscenity case has personally read from beginning to end all of the material offered by him for sale." *Id.* at 228, 273 A. 2d at 450.

Md. Ann. Code art. 27, § 417 (4) defines "knowingly" as "having knowledge of the character and content of the subject matter." Such a definition satisfies, constitutionally, the scienter element of an obscenity crime. Contrary to what Wheeler asserts, the accused need have no knowledge that the offending material is itself obscene, as that determination is a question of law. *Rosen v. United States,* 161 U. S. 29, 41-42, 16 S. Ct. 434, 438, 40 L. Ed. 606, 610 (1896).

More recently, Mr. Justice Rehnquist, speaking for the. Court in *Hamling v. United States,* 418 U. S. 87, 123, 94 S. Ct. 2887, 2910-11, 41 L.Ed.2d 590, 624 (1974), reiterated:

> "It is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributed, and that he knew the character and nature of the materials. To require proof of a defendant's knowledge of the legal status of the materials would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law."

*See also Ginsberg v. New York,* 390 U. S. 629, 88 S. Ct. 1274, 20 L.Ed.2d 195 (1968); *Mishkin v. New York,* 383 U. S. 502, 86 S. Ct. 958, 16 L.Ed.2d 56 (1966); *Smith v. California,* 361 U. S. 147, 80 S. Ct. 215, 4 L.Ed.2d 205 (1959).

Whether a sale is made with knowledge of the character and content of the subject matter is determined by the totality of the circumstances, and not, as appellant argues, by proving that appellant actually read the matter which turned out to be obscene. This rule is well delineated in *Woodruff v. State, supra* at 228, 273 A. 2d at 450-51.

We believe the evidence adduced by the State was sufficient, if believed, as it obviously was, for the jury reasonably to infer that Wheeler knew or had notice of the

contents of the magazine. By his sale of the matter, Wheeler assumed responsibility for it and must abide the consequences.[5]

*Judgment affirmed.*
*Costs to be paid by appellant.*

---

**5.** We note that Wheeler did not testify at the trial on the merits, although he did so at the hearing on the motion to suppress. At that time, Wheeler said he had no knowledge of the content of the magazine. He further stated that, in addition to the type of material described above, the store sold *Reader's Digest* and *Life*, and that both were on display. If indeed *Life* was sold at the store, it would of necessity have been back issues because *Life* ceased being a periodical in 1972.