## MARYLAND MORTGAGE AND INVESTMENT COMPANY *v.* STATE OF MARYLAND

[No. 532, September Term, 1974.]

*Decided February 24, 1975.*

The cause was argued before THOMPSON, GILBERT and MOORE, JJ.

*Eugene Hettleman* for appellant.

*Amicus Curiae* brief filed by Mayor and City Council of Baltimore, *Benjamin L. Brown, City Solicitor* and *Richard M. Hartman, Chief Assistant Solicitor,* on the brief.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B.*

*Allen, State's Attorney for Baltimore City, Barry Norwitz* and *C. Keith Meiser, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

This appeal is the sequel to *R. S. Constr. Co. v. City of Baltimore*, 269 Md. 704, 309 A. 2d 629 (1973). In that case R. S. Construction Company had sued the Mayor and City Council of Baltimore in the Circuit Court for Baltimore City. The company sought to have the Upton Urban Renewal Ordinance, No. 794, of the Mayor and City Council of Baltimore, declared unconstitutional on the ground that it violated the equal protection clause of the "federal and state constitutions." The trial judge (Ross, J.) ruled that R. S. Construction Company had fallen short of producing the degree of proof necessary to overcome the presumption of the constitutionality of the Ordinance. The Court of Appeals of Maryland held that bare evidence of the existence of a difference in the treatment of two allegedly similar situations, devoid of details of surrounding circumstances, fails to meet the heavy onus cast upon those claiming a denial of equal protection of the laws.

Approximately one month prior to the Court's opinion in *R. S. Constr. Co., supra,* the appellant, owner of 704 West Lafayette Avenue, was served with a Baltimore City Departments of Fire, Health and Housing and Community Development "Violation Notice". The notice listed eighty-one separate alleged violations. Apparently, after the opinion of the Court of Appeals had been handed down, the appellant determined to succeed where R. S. Construction Company had failed. Appellant purposely charted a collision course with the City in order that appellant could challenge the constitutionality of Ordinance No. 794.

The Ordinance condemned "for urban renewal purposes" numerous properties located within the geographical confines of what it defined as the Upton area, and it set certain standards to be "applied to all residential uses within the project area other than those structures" the City had determined to acquire through condemnation.

The specific provision of the ordinance that appellant attacks is designated as § 7 (a) (3). It requires that within the Upton area:

> "All lead base paint shall be removed from interior surfaces of dwellings before repainting. Good repair shall include keeping properly painted all interior surfaces which are painted in normal practice."

Appellant, under penalty of "a fine not exceeding One Hundred Dollars ($100.00) and . . . each day's violation shall constitute a separate offense, was directed to (1) "Remove all loose or deteriorated paint and repaint," and (2) to remove all "loose or defective paper on walls or ceilings and . . . refinish." When appellant declined to correct the defects noted in the "violation notice", a summons was issued out of the Housing Part of the District Court for District 1, and the matter was set for trial before Judge Hudnet. The judge disagreed with the appellant's contention that it was denied the equal protection of the laws, and he adjudged appellant guilty. Obviously cognizant that appellant was seeking to challenge a law rather than flout it, the court suspended the imposed fine. Appellant entered an appeal to the Criminal Court of Baltimore where issue was joined before Judge Shirley B. Jones, without the intervention of a jury.

The evidence presented to Judge Jones established that the appellant's property at 704 West Lafayette Avenue is within the Upton area. All of the open charges [1] against appellant, with one exception,[2] not applicable to this opinion, would not have been placed had the property not been located within the Upton urban renewal project. The subject property is similar in exterior appearance to other properties not situate within Upton's boundaries. The appellant's expert witness, the president of R. S. Construction Company, testified that, absent the

---

1. It appears from the record that all "violations" not peculiarly applicable to the Upton area had been corrected prior to trial.

2. The "exception" was an alleged violation of the Baltimore City Housing Code.

requirement of § 7 (a) (3) of Ordinance 794, there were, in his opinion, no factors necessitating repainting and repapering, and that in other areas of the City one was required only to remove defective paint or paper. Once having done so, it was not mandated that repainting and repapering be accomplished.

The testimony produced on behalf of the State was elicited from Mr. Michael Calvert, Chief Planner for the Department of Housing and Community Development. Mr. Calvert, after testifying to the basic "theory behind the [Upton] community renewal plan", said that the properties in the Upton area were "considerably worse, measurably worse" than those areas against which he had been asked to compare Upton.

Judge Jones held that Ordinance No. 794 is constitutional as it applies to 704 West Lafayette Avenue, that appellant had not been denied equal protection of the laws, and that appellant was guilty of violating the housing code. The judge imposed the same sanction as that meted to appellant in the District Court.

Because we considered the resolution of the case to be in the public interest and of great importance, not only to the appellant, but to the State and the City of Baltimore as well, we granted *certiorari*.[3] Courts and Judicial Proceedings Article § 12-305.

Appellant seeks to have us reverse the judgment of the Circuit Court by holding that the Upton Ordinance invidiously discriminates against the appellant, thus denying it equal protection of the laws. We not only decline to do so, but we expressly hold that the Upton Ordinance is a constitutional application of the police power of the City of Baltimore.[4]

In *Queen Anne's County v. Miles*, 246 Md. 355, 228 A. 2d 450 (1967) the Court stated:

---

**3.** Under existing Maryland law, the appellant has no further right of review by the courts of this State. Courts Art. § 12-202.

**4.** That the City possesses police power cannot be doubted. Baltimore City Charter § 6 (24) (1949). *See also* 7 E. McQuillan, *The Law of Municipal Corporations* § 24.563 (3rd ed. rev. J. Latta 1968) and cases therein cited.

> "A person who contends that there has been a denial of the equal protection of the laws has the burden of showing that his situation is the same as another situation, and that the State, or its instrumentalities, has treated the two situations differently in an unreasonable or arbitrary manner."

*See also R. S. Constr. Co. v. City of Baltimore, supra.* While the appellant, in the trial court, presented evidence in order to establish that it was treated differently than persons owning property without the boundaries of the Upton area, it did not demonstrate that such difference in treatment was unreasonable or arbitrary.

The Upton Ordinance, as is the case with any urban renewal ordinance, was enacted for the purpose of removing slums and blight from the City. A poignant description of the effect of slums and blight may be found in an article by Greaney, Praetz and Modzelewski, entitled *"Hampden County Housing Court: A Product of Citizen Initiative,"* in 58 Judicature 277 (1975) wherein it is said:

> "Slum neighborhoods erode the mental and physical health of the urban poor who inhabit them. Dilapidation and overcrowding cause stress and tension that in turn lead to crime and violence. Defective plumbing and heating, inadequate ventilation, broken plaster, chipping paint, faulty electrical systems threaten occupants' health and safety. Neighborhoods with failing buildings and inadequate city service go hand in hand with the related social ills of ineffective schools, alcoholism, traffic in drugs, unwanted pregnancies and high juvenile delinquency."

From the foregoing description it can be readily seen that the City has a vital interest and public purpose in the prevention of slums and blight. *See also Master Royalties Corp. v. Mayor & City Council,* 235 Md. 74, 200 A. 2d 652 (1964); *Herzinger v. City of Baltimore,* 203 Md. 49, 98 A. 2d 87 (1953). It follows that "prevention of slums" necessitates

the establishment of a level of minimum, acceptable housing standards; otherwise "prevention" would be an empty, meaningless concept. Absent some sort of minimum standards, slums would flourish, the health of the City's citizens become adversely affected and, rather than remove blight, it would be nurtured.

Mr. Calvert testified that an area is selected to be an urban renewal project because it has "the greatest extent of blight, [and] the greatest need for a . . . renewal treatment."

The basic thrust of appellant's attack upon the "Upton Ordinance" is that it required appellant to maintain a standard not required by the City Housing Code to be so maintained in other areas of the City. A similar contention was made in *People v. City of Chicago*, 3 Ill. 2d 539, 121 N.E.2d 791 (1954). There a property owner in what was styled "a conservation area", was required to comply with the "conservation plan". The City of Chicago could, through eminent domain, take a non-conforming property, or it could apply to the courts for the right to make the necessary repairs in order to bring the property up to the required standard, and then a lien could be imposed upon the property. A property owner challenged the constitutionality of the conservation area concept on the ground that "no reasonable basis exists for imposing . . . [conservation] requirements upon owners of property in conservation areas and not upon those who live beyond such areas." The property owner asserted that if a dwelling house in a conservation area tended to create a slum condition because it did not meet the conservation plan's minimum standards, a similar residence not situate within the designated conservation area would likewise have a tendency to create a slum condition. The court said:

> "An act is not local or special because it operates in but one place, or upon a particular class of persons or things, provided there is a reasonable basis for the legislative classification. . . . The issue, then, is whether . . . there is a legitimate basis for a classification which distinguishes between property within conservation areas and other property. The

14

> prevention of slum and blighted areas is a public use and a public purpose. The legislature has found the conditions which it seeks to remedy exist upon an area basis rather than upon the basis of individual structures. . . . Legislative action taken to meet the evil in the form in which it most clearly exists cannot be said to be either clearly unreasonable or palpably arbitrary."

We think the City of Baltimore's approach to the elimination of slums and blight on a designated area basis, rather than a wholesale simultaneous attack on such conditions in all areas of the City, to be reasonable. This is particularly true when we consider that the City does not have the unlimited wealth or manpower necessary in order to undertake, inspect and enforce a city-wide urban renewal project. It must, of necessity, approach the concept of urban renewal on an area basis. That the property owners within the Upton area are required to uphold a standard of maintenance higher than a property owner who is not in the designated area does not violate equal protection of the laws. "Exact equality is no prerequisite of equal protection of the laws within the meaning of the Fourteenth Amendment." *Norvell v. Illinois*, 373 U. S. 420, 83 S. Ct. 1366, 10 L.Ed.2d 456 (1963). *See also Bush v. Director*, 22 Md. App. 353, 324 A. 2d 162 (1973), *cert. denied* by Court of Appeals, October 24, 1974, 272 Md. (1974).

In *Bush, supra*, we quoted the late Chief Justice Warren who penned in *Baxstrom v. Herold*, 383 U. S. 107, 86 S. Ct. 760, 15 L.Ed.2d 620 (1966) at 111:

> "Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have relevance to the purpose for which the classification is made."

We went on to state that:

> "We reject the notion that mathematically precise equality of procedures, or absolute symmetry, is the command of the Fourteenth Amendment."

We think there is a rational basis for the City's designation of the Upton area as an urban renewal project, and the resulting application of minimum housing standards thereto, notwithstanding that the City has not applied those same standards city-wide. The distinction between the Upton area and other parts of the City has a relevance to the purpose for which the difference in treatment is made.

"... [T]he law does all that is needed when it does all that it can, indicates a policy, applies it to all within the lines, and seeks to bring within the lines all similarly situated so far and so fast as its means allow."

*Buck v. Bell*, 274 U. S. 200, 208, 47 S. Ct. 584, 71 L. Ed. 1000 (1927), (Holmes, J.).

In our view the appellant has failed to demonstrate that there is no rational basis for the distinction in treatment between the Upton area and the balance of the properties within the City, nor has it shown that the difference in the treatment afforded appellant, *vis a vis* others not within Upton, is arbitrary and capricious. In fact, the evidence is to the contrary.

> *Judgment affirmed.*
> *Costs to be paid by appellant.*