[Civ. No. 34933. First Dist., Div. Four. Sept. 15, 1975.]

EAST BAY MUNICIPAL UTILITY DISTRICT,
Cross-complainant and Appellant, v.
RICHMOND REDEVELOPMENT AGENCY,
Cross-defendant and Respondent.

## COUNSEL

John B. Reilley and Wayne N. Witchez for Cross-complainant and Appellant.

Fitzgerald, Johnson & Berg and James T. Johnson for Cross-defendant and Respondent.

## OPINION

**CHRISTIAN, J.**—East Bay Municipal Utility District (hereinafter EBMUD) appeals from a judgment denying recovery from respondent Richmond Redevelopment Agency of the cost of relocating certain water mains in streets of the City of Richmond.

The Richmond Redevelopment Agency was created under the Community Redevelopment Law. (Health & Saf. Code, § 33000 et seq.); its powers are those conferred by statute. (See Health & Saf. Code, § 33122.) EBMUD is a municipal utility district created as authorized by the Municipal Utility District Act (Pub. Util. Code, § 11501 et seq.); it exercises a statutory franchise to locate in the streets of the City of

Richmond lines for the supply and distribution of water. (See Pub. Util. Code, § 12808.)

In 1966, the redevelopment agency devised an urban renewal plan for downtown Richmond. Among the improvements planned was the widening of Barrett Avenue, between 6th and 14th Streets. The redevelopment agency simultaneously entered into a grant in aid and cooperation agreement with the City of Richmond. One provision of the agreement was that the city would provide plans and specifications and pay costs incurred for the redevelopment project. Barrett Avenue, between 6th and 14th Streets, was within the redevelopment area. Among the functions the city agreed to undertake were "the installation, construction, or reconstruction within the project area of streets, utilities, parks, playgrounds and other necessary improvements . . ." The city also agreed to "accomplish or cause to be accomplished the vacating of all streets, roads, alleys and other public ways, to be eliminated in preparing the project area for its new uses, as shown in the urban renewal plan . . ." The city desired, independent of the agency's project, to widen Barrett Avenue in order to improve traffic flow.

McGuire and Hester contracted to perform the improvements on Barrett Avenue. Kister, Savio and Rei,. Inc. was employed by the redevelopment agency as project engineers. In 1966, plans submitted by the engineers indicated that EBMUD's existing water mains in Barrett Avenue would have to be relocated in order to accommodate the street improvements. The City of Richmond took no action to compel relocation of the water main. EBMUD decided to abandon its existing 6-inch main along the project area and substituted an 8-inch main so located as to be compatible with the street project; expenses totaling $44,727.87 were incurred by EBMUD, but no right of compensation was asserted.

In 1968, McGuire and Hester brought suit against the redevelopment agency, claiming that the agency had failed to clear the site so as to allow it to perform the Barrett Avenue work expeditiously. The redevelopment agency thereafter cross-complained against three utilities, including EBMUD, for indemnification on the ground that delay in the utilities' relocation of their facilities had caused the delay to the contractor. EBMUD, in turn, brought a cross-cross-complaint against the redevelopment agency, contending that the agency was liable for costs it had incurred in relocating its water mains.

While disclaiming liability to EBMUD, the redevelopment agency applied to the United States Department of Housing and Urban Development (hereinafter HUD) for matching federal grants for these same costs. Under federal law, relocation expenses of public utilities occasioned by redevelopment are eligible for matching federal grants (see Urban Renewal Handbook, RHA 7209.1, ch. 1, par. [7]), and the federal loan and capital grant contract between the redevelopment agency and HUD so provided.

The trial court determined that the redevelopment agency had no duty to compensate EBMUD for the expense of relocating its water mains.

■ EBMUD contends that the redevelopment agency is required by statute to compensate utilities for relocation costs incurred for the benefit of redevelopment projects. ■ "[I]t has generally been held that a public utility accepts franchise rights in public streets subject to an implied obligation to relocate its facilities therein at its own expense when necessary to make way for a proper governmental use of the streets." (*Southern Cal. Gas Co.* v. *City of L. A.* (1958) 50 Cal.2d 713, 716 [329 P.2d 289], cert. den., 359 U.S. 907 [3 L.Ed.2d 572, 79 S.Ct. 583]; accord, *New Orleans Gas Co.* v. *Drainage Comm.* (1905) 197 U.S. 453, 461-462 [49 L.Ed. 831, 835, 25 S.Ct. 471]; *L. A. County Flood Control Dist.* v. *Southern Cal. Edison Co.* (1958) 51 Cal.2d 331, 334 [333 P.2d 1]; *County of Contra Costa* v. *Central Contra Costa Sanitary Dist.* (1964) 225 Cal.App.2d 701, 703 [37 Cal.Rptr. 767]; *East Bay Municipal Utility Dist.* v. *County of Contra Costa* (1962) 200 Cal.App.2d 477, 480 [19 Cal.Rptr. 506]; see also cases cited in *In Re City of Center Line* (1972) 387 Mich. 260, 264 [196 N.W.2d 144, 146]; but see *Maywood Mut. Water Co. No. 2* v. *City of Maywood* (1972) 23 Cal.App.3d 266, 273-274 [100 Cal.Rptr. 174]; *Northeast Sacramento etc. Dist.* v. *Northridge Park etc.* (1966) 247 Cal.App.2d 317, 325-326 [55 Cal.Rptr. 494]; *County of Contra Costa* v. *Central Contra Costa San. Dist.* (1960) 182 Cal.App.2d 176, 179-180 [5 Cal.Rptr. 783].) Notwithstanding the general rule, a utility may be granted by statute the right to compensation for relocating its lines. (*Southern Cal. Gas Co.* v. *City of L. A., supra,* 50 Cal.2d at p. 719.)

■ The Legislature has enacted a comprehensive statutory scheme for allocating costs incurred as a result of redevelopment. Health and

Safety Code section 33391 provides that a redevelopment agency "may . . . . Acquire real property by eminent domain." The power of eminent domain extends to property already devoted to a public use. (Health & Saf. Code, § 33395.) Real property is defined in Health and Safety Code section 33390, subdivision (d), to include "Every estate, interest, privilege, easement, franchise, and right in land, including rights-of-way, . . ." The apparent purpose of Health and Safety Code sections 33390, 33391 and 33395 is to protect franchise holders, including utilities, from uncompensated seizures of property occasioned by redevelopment projects. (See *Vermont Gas Systems, Inc.* v. *City of Burlington* (1971) 130 Vt. 75, 82 [286 A.2d 275, 279]; *City of Center Line* v. *Michigan Bell Tel. Co.* (1970) 26 Mich.App. 659 [182 N.W.2d 769], affd. 387 Mich. 260 [196 N.W.2d 144]; *Mayor etc. of Baltimore* v. *Baltimore Gas & Elec. Co.* (1959) 221 Md. 94 [156 A.2d 447]; *In re Gillen Place, Borough of Brooklyn, etc.* (1952) 304 N.Y. 215 [106 N.E.2d 897]; *City of Columbus* v. *Indiana Bell Telephone Co.* (1972) 152 Ind.App. 22 [281 N.E.2d 510].)

 A redevelopment agency official admitted, and the documentary evidence indicated, that the Barrett Avenue improvement was related to the redevelopment project and was undertaken for the benefit of the redevelopment agency as well as for the convenience of the traveling public.

Therefore, if the relocating costs had been incurred as a result of an exercise of governmental power by the redevelopment agency (through an eminent domain proceeding or by a taking established as compensable in an inverse condemnation action) EBMUD would have been entitled to recover. But the record does not establish that there was any taking. EBMUD engineers planned the relocation of the line. EBMUD decided to replace the old line with a larger one. No indication of the cost of the work was given by EBMUD to the redevelopment agency. There was no resistance to the planned relocation and no claim for compensation. It was not until the present litigation had been commenced by McGuire and Hester, and about two years had elapsed after the purported taking, that EBMUD came forward with the theory that there had been a compensable exercise of the power of eminent domain. The evidence well supports the trial court's finding that "the claim of EBMUD was an afterthought which followed the filing of a cross-complaint by the AGENCY against EBMUD . . ." That finding imports

a determination by the trial court that the relocation costs had not been imposed upon EBMUD by an exercise of the agency's power of eminent domain.

The judgment is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.