[Civ. No. 40714. First Dist., Div. Four. Dec. 1, 1977.]

CITY OF SAN PABLO, Plaintiff, Cross-defendant and Respondent, v.
EAST BAY MUNICIPAL UTILITY DISTRICT,
Defendant, Cross-complainant and Appellant;
SAN PABLO REDEVELOPENT AGENCY et al.,
Cross-defendants and Respondents.

**COUNSEL**

John B. Reilley and Robert C. Helwick for Defendant, Cross-complainant and Appellant.

Leland F. Reaves, City Attorney, and Den-Dulk, Douglass & Anderson and Robert T. Anderson for Plaintiff, Cross-defendant and Respondent and for Cross-defendants and Respondents.

**OPINION**

**EMERSON, J.**\*—Defendant-appellant East Bay Municipal Utility District (hereafter EBMUD) appeals from a judgment awarding plaintiff-respondent City of San Pablo (hereafter the city) the sum of $53,446 which the city had previously paid to EBMUD for the purpose of relocating certain water facilities in the "South Entrance Redevelopment Project" area of the city.

As will be shown more fully below, the city advanced the sum in question in order to facilitate the relocation of certain water lines. EBMUD had refused to move the lines at its own expense. The parties entered into an agreement, whereby the city would provide the funds required to complete the relocation, but each party would reserve the right to litigate the issue of who must bear the cost of relocation. The city instituted the within action for declaratory relief to recover the $53,446 which it had paid EBMUD for relocation of water lines and facilities. EBMUD filed a cross-complaint against the city and the redevelopment agency for a declaration of its "statutory right" to compensation for relocation of water lines. After a nonjury trial, the court found in favor of the city and the agency and against EBMUD, and entered the judgment here appealed from.

The circumstances underlying this controversy began when the city enacted ordinance No. 602 approving the South Entrance Redevelopment Project. Thereafter, the San Pablo Redevelopment Agency, whose directors are comprised of members of the San Pablo City Council, entered into an agreement with Eltinge, Graziadio & Sampson (hereafter EGS) Development Company for the sale of certain real property within the project area for the purpose of constructing a K-Mart Commercial Center thereon. One of the conditions in the contract was that the city would agree to provide for installation of all utilities necessary to serve the proposed shopping center.

Because of the planned commercial center, it was necessary that the city abandon certain streets within the project area. Abandonment was already indicated, since for years the city had been considering vacation and realignment of San Pablo Dam Road and Riverside Avenue, due to hazardous traffic conditions. On October 25, 1972, after a properly noticed hearing on abandonment, the city council found and determined

---

\*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

that the streets proposed to be abandoned were "unnecessary for present or prospective street purposes," and ordered them vacated and abandoned. At the hearing, counsel for EBMUD appeared and requested that the city reserve easements for the benefit of EBMUD in the abandoned streets. The city council refused to reserve such easements.

During October and November of 1972, the city and EBMUD representatives negotiated over whether EBMUD's water mains would have to be relocated, and if so, at whose expense. EBMUD officials inquired into the possibility of retaining existing water mains along the abandoned roads, but were told by the agency's engineering department that relocation would be required, since the proposed plans for the project called for the construction of a building over the site where the water mains were currently emplanted.

In order to fund public improvements in the project area, the city had created an assessment district pursuant to the Municipal Improvement Act of 1913. (Sts. & Hy. Code, § 10000 et seq.) The city was without funds to pay for the agreed upon relocation of water facilities, and therefore included this item in the assessment district proceedings in order to provide such funds. Due to the agency's earlier agreement with EGS Development Company, and a concomitant agreement between the city and the agency, the city incurred the obligation to pay these assessments.

Relying on the facts just set forth, EBMUD contends that it is entitled to compensation from the city or agency under either (or both of) California's Community Development Law or the Municipal Improvement Act of 1913. We discuss first its claim under the Community Development Law. (Health & Saf. Code, § 33000 et seq.)

The crux of EBMUD's appeal is that the evidence below established as a matter of law the acquisition by it of a statutory right to compensation for relocation of its facilities under the Community Redevelopment Law. EBMUD readily concedes that under the general common law rule " . . . a public utility accepts franchise rights in public streets subject to an implied obligation to relocate its facilities therein at its own expense when necessary to make way for a proper governmental use of the streets." (*Southern Cal. Gas Co.* v. *City of L.A.* (1958) 50 Cal.2d 713, 716 [329 P.2d 289], cert. den., 359 U.S. 907 [3 L.Ed.2d 572, 79 S.Ct. 583]; *East Bay Municipal Utility Dist.* v. *County of Contra Costa* (1962) 200 Cal.App.2d 477, 480 [19 Cal.Rptr. 506].) In the cases cited above,

utilities which were forced to relocate as the result of road reconstruction or the laying of sewer lines by local agencies, were held to have incurred the implied obligation to relocate at their expense.

EBMUD urges implementation of the qualification to this rule, i.e., that the Legislature may nevertheless by statute grant utilities the right to compensation for relocating their lines. (*Southern Cal. Gas Co.* v. *City of L.A., supra,* 50 Cal.2d at p. 719.) It relies on the recent case of *East Bay Muni. Utility Dist.* v. *Richmond Redevelopment Agency* (1975) 51 Cal.App.3d 789 [124 Cal.Rptr. 606], where EBMUD cross-complained against a redevelopment agency for compensation for expenses incurred in relocating its lines to accommodate public improvements under a redevelopment project. There, the argument was made that California's Community Redevelopment Law provided a statutory mandate for payment to utilities of relocation costs incurred for the benefit of redevelopment projects.

It is true that the appellate court in the *Richmond* case stated, by way of dictum, "[t]herefore, if the relocating costs had been incurred as a result of an exercise of governmental power by the redevelopment agency (through an eminent domain proceeding or by a taking established as compensable in an inverse condemnation action) EBMUD would have been entitled to recover." But the holding of the case was that a public utility can recover relocation costs incurred as the result of the commencement of a redevelopment project only if there is an *actual exercise of governmental power* by the redevelopment agency, either through an eminent domain proceeding or by a taking established as compensable in an inverse condemnation action. (51 Cal.App.3d at p. 794.) California's Community Redevelopment Law contains express provisions for both proceedings in connection with the adoption of a redevelopment plan. (Health & Saf. Code, §§ 33391-33395, 33399.) Here, neither proceeding has taken place and the agreement entered into between the city and EBMUD does not in any way characterize the city's payment of $53,446 as compensation to EBMUD for the agency's "taking" of its property, or even indicate that relocation was being undertaken for the benefit of the redevelopment project. Rather, it merely provides that the city shall provide the funds for such relocation while specifically reserving the right to litigate the matter of whether or not it may be properly charged for this expense. These considerations were no doubt controlling in the mind of the trial judge, who declared in his memorandum of decision that EBMUD was not legally entitled to

compensation since the record had not established any "taking" by the city or the agency.

EBMUD seeks to distinguish the instant case from *Richmond*, asserting that herein it did make a claim for compensation, it did send the city an estimate of the cost of the work, and it did refuse to relocate until paid by the city. It is claimed, therefore, that the necessity of relocating the lines arose from an actual taking of EBMUD's property by the redevelopment agency.

There is no doubt from the evidence that the proposed redevelopment project was a precipitant factor in the city's street abandonment and consequent relocation of EBMUD's lines. However, there is also substantial evidence that another causal factor was the city's desire to alter and realign these streets in order to improve traffic conditions, and, indeed, the trial judge found that "[i]t was necessary that the water facilities of East Bay Municipal Utility District located in the abandoned streets be relocated solely as the result of such street abandonments. . . ."

Attacking this finding (finding of fact No. 11), EBMUD asserts that the testimony at trial was "unequivocal" that the facilities were not relocated as the result of street abandonment, but to accommodate the redevelopment project. The claim is semantic: Relocation was necessitated because the city abandoned the streets and failed to retain easements for the benefit of EBMUD (Sts. & Hy. Code, §§ 8324, 8330-8331.) *Abandonment* itself was caused by the intention of the city to facilitate project improvements as well as to realign the streets for smoother traffic flow. The court's finding that relocation was required as the result of street abandonment is supported by substantial evidence, and should not be disturbed on appeal. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

We conclude that, since the redevelopment agency did not exercise its governmental powers under the Community Redevelopment Law to secure abandonment and relocation of EBMUD's water mains, it was not therefore obligated to reimburse EBMUD for its relocation expenses. And since the city's vacation of public streets in order to improve dangerous traffic conditions and enable the removal of urban blight and substandard conditions is obviously a proper exercise of its police powers, under established California precedent, EBMUD was required to bear its own relocation costs. (*Southern Cal. Gas Co.* v. *City of L.A., supra*, 50 Cal.2d 713, 716; *County of Contra Costa* v. *Central Contra Costa Sanitary*

*Dist.* (1964) 225 Cal.App.2d 701, 703 [37 Cal.Rptr. 767]; *East Bay Municipal Utility Dist.* v. *County of Contra Costa, supra,* 200 Cal.App.2d 477, 480.)

EBMUD further argues that finding No. 11 is in conflict with finding No. 10, which states that "[b]ecause of the location of the improvements proposed to be constructed for the redevelopment of the area, the water facilities located in the abandoned streets would not have been kept in use by East Bay Municipal Utility District even if easements had been reserved." Finding No. 10 merely states that retention of easements by the city would have been futile in view of the proposed improvements. It does not conflict with the conclusion that abandonment coupled with the failure to reserve easements for utility lines was the actual cause of the relocation.

In any event, as discussed above, even if the court had found that relocation was the direct result of the redevelopment project, as EBMUD urges, in the absence of an exercise of governmental authority by the agency to achieve this relocation, EBMUD would not be entitled to compensation therefor. Thus the error in the findings, if any, was harmless. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 307, p. 4288.)

█ It is also vigorously urged that the court's characterization of the city's payment to EBMUD as an "advance" of moneys for relocation, is contrary to the import of the assessment district proceedings, which specifically included funds for relocation of water lines in its levies. EBMUD asserts that under the petition and resolution creating the assessment district, EGS would have had to pay for the cost of relocating EBMUD's utility lines, but that due to the city's agreement to hold EGS harmless from all assessments levied in connection with assessment district No. 10, the city itself became legally obligated to pay relocation costs.

The agreement between EBMUD and the city specifically reserved the right of the parties to litigate the question of who was properly chargeable with relocation expenses. Thus, the city's agreement to pay all assessments against the district does not dispose of the question of whether the assessment is properly chargeable to the district or to EBMUD. As counsel for the assessment district testified, all relocation costs recovered by the district would be used to reduce the assessments or to repay those who have paid them. This would be the case whether it

was the city or EGS who had initially borne costs which EBMUD was in fact obligated to pay.

In short, the city's agreement to hold the developers harmless from utility relocation assessments cannot accrue to the benefit of EBMUD, which was provided with the money from such assessments subject to the right of the city to demand reimbursement in court.

■ EBMUD next takes issue with the trial judge's conclusion that the required relocation of EBMUD's facilities was not as the result of a taking by the city or the agency but was "solely as a result of the City's valid exercise of its police power in vacating the streets in which such facilities were located." EBMUD argues that the general rule requiring utilities to relocate "when necessary to make way for proper governmental use of the streets" (*Southern Cal. Gas Co.* v. *City of L.A., supra,* at p. 716), does not apply where the city simply *vacates* a public street rather than maintaining, repairing or reconstructing it. This contention is without merit. Vacation of public streets to improve traffic circulation and substandard conditions is as valid an exercise of a city's police powers as maintenance and reconstruction of streets for the health and safety of the traveling public. (See *City of Los Angeles* v. *Superior Court* (1959) 51 Cal.2d 423, 437-438 [333 P.2d 745].)

■ EBMUD alternatively asserts a second statutory basis for its right to compensation from the city, citing that portion of the Municipal Improvement Act of 1913 which deals with improvement or installation of works under the control or ownership of a public agency. Section 10109 of the Streets and Highways Code provides: "Whenever the improvement or acquisition includes the acquiring or the installation of works, appliances or improvements authorized by this division, and the works, appliances, or improvements are, or may be, under the ownership, management, or control of any public agency other than the city making the acquisition or ordering the work done, or of a regulated public utility, the works, appliances, or improvements may be acquired or installed under the proceedings specified in this division." Section 10110 then provides, as pertinent: "Before the ordering of the work, acquisitions or improvements which are to be owned, managed or controlled by any other public agency, or regulated public utility, the legislative body *shall* enter into an agreement with the public agency or

utility which has, or may have, charge of the works, appliances, or improvements. Among other things such agreement *may* provide for any or all of the following: . . . [¶] (b) *For the performance of work or service by the public agency or utility, and the payment to the public agency or utility out of the improvement fund for such work or service.* Any agreement providing for the performance of work by a public utility may provide for the posting of labor, material and performance bonds in accordance with Chapter 6 (commencing with Section 10500) of this division." (Italics added.) EBMUD interprets subdivision (b) of the foregoing statute as *requiring* the city to enter into an agreement with EBMUD whereby the latter would be compensated for its work. While it is clear that section 10110 imposes a mandatory obligation in the city to enter into an agreement with EBMUD regarding relocation of facilities, the plain language of the statute provides that such an agreement *may* provide for payment to the utility for work performed by it. The word "may" as used in legislation is to be construed as permissive and conferring discretion unless it appears from the terms of the statute that a duty was intended to be imposed. (*Alameda County Employees' Assn.* v. *County of Alameda* (1973) 30 Cal.App.3d 518, 534 [106 Cal.Rptr. 441].) No such intent appears from the terms of section 10110. The statute merely states that the agreement *"may provide for any or all* of the following. . . ." (Italics added.)

In its closing brief, EBMUD admits that the language is permissive insofar as it allows discretion to the legislative body to have the desired work performed by the utility, but claims that it is mandatory insofar as it provides for compensation to the utility once the work is performed by it. We cannot agree with such an interpretation. The statute simply *permits* the city to include in its agreement with a utility, a provision for compensation out of its improvement fund to the utility for work or services performed by that utility. The instant case contains a variation of that agreement, i.e., that the city will provide funds for relocation work done by the utility subject to the right of the city to seek reimbursement should the court decide that the utility was obligated to relocate at its own expense. Given the permissive language of section 10110, we cannot say that such an alternative provision was meant to be excluded by the Legislature. To so hold would mean that a city would be compelled to subsidize relocation performed by a utility despite the fact that under established case law, the utility was legally liable to bear its own expense. We cannot conclude that the Legislature intended the legislative body of a local agency so to forfeit its right to seek reimbursement. We conclude

that the Municipal Improvement Act of 1913 provides no statutory authority requiring the city to finance EBMUD's relocation work herein.

The judgment is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied December 27, 1977, and appellant's petition for a hearing by the Supreme Court was denied January 26, 1978.