607 P.2d 1084

**MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a corporation; Boise Water Corporation, a corporation; and Idaho Power Company, a corporation, Plaintiffs-Respondents,**

v.

**BOISE REDEVELOPMENT AGENCY, Defendant-Appellant.**

**No. 12676.**

Supreme Court of Idaho.

March 13, 1980.

Gary D. Babbitt of Hawley, Troxell, Ennis & Hawley, Boise, for defendant-appellant.

Mark S. Geston of Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for plaintiffs-respondents.

BISTLINE, Justice.

The Boise Redevelopment Agency (B.R.A.) is an urban renewal agency for the City of Boise created pursuant to I.C. § 50–2001 *et seq.* The B.R.A. proposed a plan for a project which was approved and adopted by the City (Resolution No. 1629, March 22, 1971). The B.R.A. purchased certain contiguous lots within the project boundaries, by negotiation or condemnation, in pursuance of the plan. B.R.A. then petitioned the Ada County Highway District to vacate the streets and alleys involved.

The plaintiff utilities agreed with the B.R.A. that they would not protest the vacation proceedings and that they would relocate their facilities upon the condition that any right they might have to reimbursement for relocation costs be preserved without prejudice. The utilities relocated and thereafter requested compensation for their relocation costs from the B.R.A. and the Department of Housing and Urban Development (H.U.D.) and were denied by both.

The utilities then filed a complaint seeking a declaration of their rights under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (42 U.S.C.A. § 4601 *et seq.*), the Idaho Urban Renewal Law of 1965 (I.C. tit. 50, ch. 20), and the Constitutions of Idaho and the United States. The matter was submitted on stipulations and briefs.

The district court entered a decision declaring that the utilities were entitled to reimbursement for relocation costs and that the taking of property was compensable under I.C. §§ 50–2007 and 50–2018. It held that the B.R.A. was not an agent of the state or any municipality and thus that it did not have the authority to take property without paying compensation. The court also held that it lacked jurisdiction to decide the Uniform Act claim because the Department of Housing and Urban Development was not present and because it would have

to interpret a possible conflict in federal law. The B.R.A. appealed. We reverse and remand for further proceedings.

We begin our analysis by noting that this Court followed the common law rule, that utilities bear the expense of relocating their facilities in public rights of way when necessary to make way for proper governmental use of the streets, in *State v. Idaho Power Co.*, 81 Idaho 487, 346 P.2d 596 (1959). That case discussed the rule at length:

> "It is to be noted that the legislature specifically limited the use, by telegraph, telephone and electric power companies, of the public roads, streets and highways of this state 'as not to incommode the public use' thereof. I.C. §§ 62–701 and 62–705. By so limiting the use by utilities of the public thoroughfares the legislature, acting under the directive of the Constitution, Art. 11, § 13, intended a permissive use only; such is implicit in the legislation. Nor does the restriction pertain to the facilities in praesenti only, i. e., as of the time when placed in and upon the public thoroughfares. Not being so limited the restriction has application in futuro. In any case where the facilities incommode the public use of any highway, the people, under the Constitution and the legislative enactment, reserve the right to require the utilities to relocate their facilities so as not to incommode such public use. Utilities place facilities thereon under such constitutional and legislative restriction with full knowledge of such limitation. It follows that the right of utilities to the use of public thoroughfares is not and cannot be regarded as a permanent property right.

> "The permissive use of public highways, which the legislature by I.C. §§ 62–701 and 62–705 accords to utilities, is in recognition of the time honored rule existing in this state, that streets and highways belong to the public and are held by the governmental bodies and political subdivisions of the state in trust for use by the public, and that only a permissive right to their use, and no permanent property right, can be gained by those using them. . . .

> . . . . .

> ". . . The state and its political subdivisions are without power to make a valid contract permanently alienating any part of the public streets and highways or permitting a permanent encroachment or obstruction thereon limiting the use of the public thoroughfares by the public.

> . . .

> "No right to the use of streets and highways for private purposes can be acquired by prescription as against the state or its political subdivisions . . . .

> "Permissive use of a street or highway does not vest in the user a property or contractual right . . . . .

> "The power of the state and its political subdivisions to require removal of a nuisance or obstruction, which in anywise interferes with the public use of streets and highways cannot be questioned. . . .

> "Long before the adoption of our Constitution, the people adopted the common law as the rule of decision in all cases not otherwise provided by law. Such applicability in our system of judicial interpretation remained unchanged upon adoption of our Constitution . . . . .

> "Under the common law a utility, placing its facilities along streets and highways, gains no property right and upon demand must move its facilities at its expense.

> . . . . .

> "[T]here is no taking of private property for public use in causing relocation of the utilities' facilities in anywise violative of the eminent domain provisions of Idaho Const. Art. 1, § 14, the injury sustained, if any, being damnum absque injuria, since 'uncompensated obedience to a regulation enacted for the public safety under the police power of the state was not

taking property without due compensation.' . . . This is but a recognition of the fundamental proposition that respondents' permissive use of the public thoroughfares is subordinate to the paramount use thereof by the public." 81 Idaho at 498–501, 515, 346 P.2d at 600–03, 612 (citations omitted).

*Idaho Power* held unconstitutional a statute purporting to change the common law rule by requiring the Idaho board of highway directors to pay relocation costs of utilities. The statute was found to violate the prohibition against lending the credit of the state, Idaho Const. art. 8, § 2, as well as the limitation on expenditures of gasoline taxes in art. 7, § 17.

■ Here we are faced with a somewhat different problem. The utilities[1] have sued the B.R.A., "an independent public body corporate and politic," I.C. § 50–2006(a), and we must decide whether that body is liable for the relocation costs here in question. We hold that it is not.

It is by now undisputed that the State in acting to remove blight and slums through urban redevelopment is acting through the police power, *Berman v. Parker,* 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); *Alanel Corp. v. Indianapolis Redevelopment Commission,* 239 Ind. 35, 154 N.E.2d 515 (1958); *City of Louisville v. Thompson,* 339 S.W.2d 869 (Ky.App.1960); *Maryland Mortgage & Investment Co. v. State,* 25 Md.App. 8, 332 A.2d 675 (1975); *Wilson v. City of Long Branch,* 27 N.J. 360, 142 A.2d 837, cert. denied, 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958); *Palombo v. Housing Board of Review,* 92 R.I. 421, 169 A.2d 613 (1961); *Mumpower v. Housing Authority,* 176 Va. 426, 11 S.E.2d 732 (1940); McQuillan, Municipal Corporations, § 24.563 (3d ed. 1968), and that vacating a public street to make way for a development project to relieve urban blight is a proper governmental use of the streets. *Pacific Telephone & Telegraph Co. v. Redevelopment Agency of Glendale,* 87 Cal.App.3d 296, 151 Cal.Rptr. 68 (1978).

■ Further, the State may delegate the police power to boards, commissions and agencies. *Fernandez v. Alford,* 203 La. 111, 13 So.2d 483 (1943); *Central Maine Power Co. v. Waterville Urban Renewal Authority,* 281 A.2d 233 (Me.1971); *First National Bank v. Maine Turnpike Authority,* 153 Me. 131, 136 A.2d 699 (1957); *Bidlingmeyer v. City of Deer Lodge,* 128 Mont. 292, 274 P.2d 821 (1954); *Foeller v. Housing Authority,* 198 Or. 205, 256 P.2d 752 (1953); *City of Huntington v. State Water Commission,* 137 W.Va. 786, 73 S.E.2d 833 (1953); 16A Am. Jur.2d *Constitutional Law* §§ 375, 380 (1979).

I.C. § 50–2002 states that deteriorated areas:

" . . . constitute a serious and growing menace, injurious to the public health, safety, morals and welfare of the residents of the state . . . and that the prevention and elimination of these conditions is a matter of state policy and state concern in order that the state and its municipalities shall not continue to be endangered by areas which are focal cen-

---

1. Boise Water Co. must stand on the same footing as the other utilities because nothing in its franchise agreement indicates an intent by the state or city to give up its control of the public streets, *see New Orleans Gaslight Co. v. Drainage Commission of New Orleans,* 197 U.S. 453, 25 S.Ct. 471, 49 L.Ed. 831 (1905), and the common law rule applies to franchises as well as to permissive franchises. *City of San Pablo v. East Bay Municipal Utility District,* 75 Cal.App.3d 609, 142 Cal.Rptr. 256 (1977); *First National Bank v. Maine Turnpike Authority,* 153 Me. 131, 136 A.2d 699 (1957). In fact, the franchise agreement specifically subjected the use of public streets to "the lawful exercise of the police power by the CITY and to such reasonable regulations as the CITY shall hereafter provide." Although by its terms the franchise is subject only to the police power of the city, it is also subject to the police power of the State, for neither the State nor the city can contract away the public's predominant right to the public streets. *State v. Idaho Power Co.,* 81 Idaho 487, 500, 346 P.2d 596, 602 (1959). *See also Village of Lapwai v. Alligier,* 78 Idaho 124, 299 P.2d 475 (1956); *Sandpoint Water & Light Co. v. City of Sandpoint,* 31 Idaho 498, 173 P. 972 (1918).

ters of disease, promote juvenile delinquency, and consume an excessive proportion of its revenue . . . .

. . . . .

"It is further found and declared that the powers conferred by this act are for public uses and purposes for which public money may be expended as herein provided and the power of eminent domain and police power exercised; and that the necessity in the public interest for the provisions herein enacted is hereby declared as a matter of legislative determination."

I.C. § 50–2007 confers upon the B.R.A. "all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this act, including the following powers in addition to others herein granted . . . ."

Moreover, an urban renewal project is defined in I.C. § 50–2018(j) as follows:

" 'Urban renewal project' may include undertakings and activities of a municipality in an urban renewal area for the elimination of deteriorated or deteriorating areas and for the prevention of the development or spread of slums and blight, and may involve slum clearance and redevelopment in an urban renewal area, or rehabilitation or conservation in an urban renewal area, or any combination or part thereof in accordance with an urban renewal plan. Such undertakings and activities may include—

. . . . .

"(3) installation, construction, or reconstruction of streets, utilities, parks, playgrounds, off-street parking facilities, and other improvements necessary for carrying out in the urban renewal area the urban renewal objectives of this act in accordance with the urban renewal plan . . . ."

Under very similar statutory provisions, the court in Maine stated the following:

"It cannot be disputed . . . that the Authority was vested with the police power of the State for the purpose of removing slums or blighted areas and for the rehabilitation, conservation, redevelopment of said areas or a combination thereof, as may be necessary in the interest of the public health, safety, morals or welfare of the residents of the municipality, subject, however, in the implementation of its proposed activities and in the exercise of said police power, to prior approval of its renewal plans by the municipal officers under proper governmental resolution." *Central Maine Power Co. v. Waterville Urban Renewal Authority,* 281 A.2d 233, 238 (Me.1971).

We agree with this holding. The eradication of slums and blight is a subject for the exercise of the police power, and here the State has created the Boise Redevelopment Agency to carry out that purpose. *See First National Bank v. Maine Turnpike Authority,* 153 Me. 131, 136 A.2d 699 (1957); *Wilson v. City of Long Branch,* 27 N.J. 360, 142 A.2d 837 (1958); *City of Paterson v. Housing Authority,* 96 N.J.Super. 394, 233 A.2d 98 (1967); *Mumpower v. Housing Authority,* 176 Va. 426, 11 S.E.2d 732 (1940).

The rule at common law that utilities must relocate at their own expense is not an absolute, however, but is subject to legislative provision to the contrary, and also subject to any constitutional prohibition or requirement. *See State v. Idaho Power Co.,* 81 Idaho 487, 346 P.2d 596 (1959). We must thus decide whether the legislature has provided that the B.R.A. must pay the costs of relocation.

While I.C. §§ 50–2007(h)[2] and 50–2018(j)(3) permit payment of such costs,[3]

---

**2.** I.C. § 50–2007(h) empowers the B.R.A. "to prepare plans for and assist in the relocation of persons (including individuals, families, business concerns, nonprofit organizations and others) displaced from an urban renewal area, and notwithstanding any statute of this state to make relocation payments to or with respect to

such persons for which reimbursement or compensation is not otherwise made, including the making of such payments financed by the federal government . . . ."

**3.** I.C. § 50–311 provides that after vacation, the street reverts to the adjoining property owners,

they do not appear to be mandatory. In the absence of clear legislative direction we decline to abolish the common law rule and establish a rule requiring relocation costs to be paid to permissive users such as the utilities. See *Pacific Telephone & Telegraph Co. v. Redevelopment Agency of City of Glendale,* 87 Cal.App.3d 296, 151 Cal. Rptr. 68 (1978); *Pacific Telephone & Telegraph Co. v. Redevelopment Agency of City of Redlands,* 75 Cal.App.3d 957, 142 Cal. Rptr. 584 (1977). The Urban Renewal Act appears to us to contemplate payment of relocation costs to those with more substantial property interests; there is no taking of property here, as we have noted above, merely the termination of a license to use particular streets. As indicated in *State v. Idaho Power Co., supra,* this is a risk accepted by the utilities when they accept the use of public streets and highways, and we will not legislate a change in the area of compensation for relocation costs.

The parties have also laid before us conflicting arguments regarding who *should* pay the relocation costs, raising in effect questions of equity. The utilities argue that since redevelopment is for the benefit of the public, the public should pay all the costs of such projects. It is unjust, they claim, that their customers should bear the burden of relocating their facilities when such is occasioned by a project that will not benefit the utility but rather the public as a whole. On the other hand there is the argument that the utilities use the public streets at the convenience and tolerance of the public, and the public should hence not have to pay to terminate a use which they have permitted only as a courtesy to aid the utilities. The utilities have had the benefit of using public streets to generate their profits over the years, and they should not now be heard to complain that such use is terminated; without having had that use,

other alternatives costing far more would most likely have been necessary to provide service to the customers. Thusly viewed, their customers have until now reaped a benefit.

Such arguments were raised in *State v. Idaho Power Co., supra.* The utility argued that its relocation costs, caused by reconstruction of a highway, should be paid by the users of the highway "at the gas pumps," *i. e.,* via taxes on gasoline. In rejecting the claim, this Court first noted that such an argument was not a valid one on a statute's constitutionality and that under such an argument the legislature could pay such costs via a tax on anything. The opinion continued:

> "A further answer to the argument that relocation costs should be paid by highway users is, that respondents' permissive use of the highways is for the benefit of the utilities and their subscribers and relocation costs should therefore be paid by them as an incident of such benefit; whereas payment of relocation costs 'at the gasoline pumps' by highway users would constitute an exaction for which they receive no benefit."

81 Idaho at 505, 346 P.2d at 606. Such a question of policy is not for us to answer, but for the legislature, where not constitutionally prohibited.

The parties have cited us a number of cases. Some hold cities or redevelopment agencies liable for relocation costs. See, e. g., *City of Columbus v. Indiana Bell Telephone Co.,* 152 Ind.App. 22, 281 N.E.2d 510 (1972); *City of Center Line v. Michigan Bell Telephone Co.,* 26 Mich.App. 659, 182 N.W.2d 769 (1970), aff'd. 387 Mich. 260, 196 N.W.2d 144 (1972); *Mayor of Baltimore v. Baltimore Gas & Electric Co.,* 221 Md. 94, 156 A.2d 447 (1959). See also *East Bay Municipal Utility District v. Richmond Re-*

"but the right of way, easements and franchise rights of any lot owner or public utility shall not be impaired thereby." We do not believe that this statute has any applicability in this case where the B.R.A., acting through the

State's police power, causes the utilities to relocate. Rather, this statute applies when the entity seeking to force relocation after acquiring fee ownership of the streets is not acting through the police power.

*development Agency,* 51 Cal.App.3d 789, 124 Cal.Rptr. 606 (1975) (denying compensation for other reasons but suggesting eminent domain should apply).

Other cases deny compensation. *See, e. g., Pacific Telephone & Telegraph Co. v. Redevelopment Agency of City of Glendale,* 87 Cal.App.3d 296, 151 Cal.Rptr. 68 (1978); *Pacific Telephone & Telegraph Co. v. Redevelopment Agency of City of Redlands,* 75 Cal.App.3d 957, 142 Cal.Rptr. 584 (App. 1977); *City of San Pablo v. East Bay Municipal Utility District,* 75 Cal.App.3d 609, 142 Cal.Rptr. 256 (1977); *Central Maine Power Co. v. Waterville Urban Renewal Authority,* 281 A.2d 233 (Me.1971).

At least one case has distinguished "governmental functions" from "proprietary functions," requiring compensation for the latter but not the former. *City of Baltimore v. Baltimore Gas & Electric Co.,* 232 Md. 123, 192 A.2d 87 (1963). Other courts have rejected this distinction, requiring compensation only where the legislature has so stated or where compensable property is taken. *Pacific Telephone & Telegraph Co. v. Redevelopment Agency of City of Redlands, supra.*

Virtually all of these cases and the statutes involved can be distinguished. We agree with those rejecting compensation, following the general principle that the common law rule applies until and unless the legislature has specifically stated otherwise. With those providing benefits under such specific statutes we have no quarrel, but they provide no support for compensation in the absence of such a statute in Idaho.

Since we have determined that state law provides no remedy for the utilities' complaint, we must consider whether the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C.A. § 4601 *et seq.,* might do so.

■■■ As previously mentioned, the court below declined to decide this issue on the grounds that it had no jurisdiction over the subject matter and that the Department of Housing and Urban Development (H.U.D.) was not present. In this we think it erred. We do not see H.U.D. as an essential or necessary party; the funds to which the utilities would resort are in the hands of the B.R.A. While the (alleged) right to payment is federally conferred, such rights may be enforced in state courts:

> "It is well established that the state courts have concurrent jurisdiction in all matters wherein the jurisdiction of the federal courts is not made exclusive by the constitution or acts of Congress. . . . Unless the jurisdiction conferred by the constitution and laws of the United States upon the federal courts is made exclusive of the state courts, state courts retain jurisdiction of all actions wherein they are competent to take jurisdiction under their own laws." *McCormick v. Smith,* 23 Idaho 487, 493–94, 130 P. 999, 1001 (1913) (citations omitted).

*Accord, Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962); *Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947); *Grubb v. Public Utilities Commission,* 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972 (1930); *Ollestead v. Native Village of Tyonek,* 560 P.2d 31 (Alaska) cert. denied, 434 U.S. 938, 98 S.Ct. 426, 54 L.Ed.2d 297 (1977); *Jennings v. Roberts Scott & Co., Inc.,* 113 Ariz. 57, 546 P.2d 343 (1976); *McClanahan v. Cochise College,* 25 Ariz.App. 13, 540 P.2d 744 (1975); *S. P. Growers Association v. Rodriguez,* 17 Cal.3d 719, 131 Cal.Rptr. 761, 552 P.2d 721 (Cal. 1976); *Williams v. Horvath,* 16 Cal.3d 834, 129 Cal.Rptr. 453, 548 P.2d 1125 (1976); *Brown v. Pitchess,* 13 Cal.3d 518, 119 Cal. Rptr. 204, 531 P.2d 772 (1975); *Allen v. Craig,* 1 Kan.App.2d 301, 564 P.2d 552 (1977); *Kish v. Wright,* 562 P.2d 625 (Utah 1977). *See also Lockridge v. Amalgamated Ass'n of Street Elec. Ry. & Motor Coach Employees,* 84 Idaho 201, 369 P.2d 1006 (1962) (jurisdiction taken in an area of "unsettled" federal law).

There was thus no reason for the district court to decline to pass on the federal question. In addition, it is not necessary for H.U.D. to be a party since no relief need be granted against it to resolve this case; full justice will be done by ordering the B.R.A. to comply with federal law, if it becomes apparent that it has not done so.

The problem yet remaining is what the federal law requires of the B.R.A. Only the utilities have presented arguments concerning this issue on appeal. Further, we have no record of any presentation below and no findings and conclusions of the district court to aid us. In light of these facts, we remand the case to the district court so that both sides will have an adequate opportunity to present their positions and the district court will be able to resolve any factual issues and enter its conclusions of law.

Reversed and remanded for further proceedings in accordance herewith. Costs of appeal to appellants.

DONALDSON, C. J., SHEPARD and BAKES, JJ., and SCOGGIN, J. Pro tem., concur.