# DONNELLY ADVERTISING CORPORATION OF MARYLAND ET AL. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 138, September Term, 1976.]

*Decided March 21, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Jerald J. Oppel* and *William L. Balfour*, with whom were *Michael H. Davis* and *Ober, Grimes & Shriver* on the brief, for appellants.

*Richard M. Hartman, Chief City Solicitor*, with whom were *Benjamin L. Brown, City Solicitor*, and *C. Laurence Jenkins, Jr., Assistant City Solicitor*, on the brief, for appellees.

MURPHY, C. J., delivered the opinion of the Court.

The primary question presented in this case is whether § 5 (g) of the Oldtown Urban Renewal Ordinance No. 760 of

the Mayor and City Council of Baltimore (the City), approved April 7, 1970, requiring removal of all signs in the renewal area covered by the ordinance other than those identifying the premises on which they are located, is valid and constitutional. Appellants—Donnelly Advertising Corporation of Maryland, owner of advertising structures throughout the city on land leased or owned by it, and the Flaccomios, owners of Oldtown property leased to Donnelly—sought a declaration that the ordinance was unconstitutional, illegal, null, and void, and an injunction restraining its enforcement. The Circuit Court of Baltimore City (Cole, J.), after a hearing, concluded that the ordinance was constitutional and valid and dismissed the action. Donnelly and the Flaccomios appealed. We granted certiorari prior to decision in the case by the Court of Special Appeals.

The Oldtown Urban Renewal Plan has multiple objectives. These include development of a good residential neighborhood, removal of substandard buildings, elimination of blighting influences, revitalization of the shopping area, maximization of employment opportunities, and protection of the neighborhood from future blighting influences. The ordinance authorizes the City to acquire properties within the area for urban renewal purposes and sets rehabilitation standards for the residential, retail, commercial, wholesale/service commercial, and industrial uses within the project area.

Section 5 (g) of the ordinance prohibits all "signs other than those identifying the property where they are installed or identifying the use conducted therein . . . ." It applies to all land uses within the project area except for residential; signs in residential areas are prohibited by other ordinances. The ordinance mandates that all outdoor advertising billboards larger than 60 square feet be removed within 5 years, *i.e.*, by April 7, 1975, without compensation for their removal.

Donnelly owns four billboards within the Oldtown renewal area covered by the ordinance. One of them is located on land owned by the Flaccomios. All of the signs are

within the commercial quadrant of the project area, and are claimed by the City to be in violation of the ordinance. Each sign is larger than 60 square feet. One poster panel, located at 420 Ensor Street was erected in 1955; two panels at 1059 Hillen Street were erected in 1960. The panel located on the Flaccomio property, 405 North Exeter Street, was erected in 1972, after passage of the ordinance. Donnelly claims that all were constructed pursuant to permits and thus did not constitute a detriment to public health, safety, welfare, or morals.

Appellants challenge the ordinance on five grounds. First, they claim that the City failed to comply with the proper notice procedures in enacting the ordinance. Second, they claim that monetary compensation must be paid for removal of the two panels located within 660 feet of U.S. Route 40, pursuant to the Federal Highway Beautification Act, 23 U.S.C. § 131 (1966, 1976 Cum. Supp.). Third, it is claimed that the ordinance violates the First Amendment rights of appellants, as well as those of Donnelly's clients and of Oldtown residents and visitors, because it eliminates from the area a prime medium of communication. Fourth, it is contended that the sign removal requirement arbitrarily and unreasonably denies equal protection of the law to appellants in that on-premises billboards are allowed in the Oldtown renewal area while off-premises panels are not, and billboards are allowed in other commercial sections of the city but not in Oldtown. Finally, appellants contend that the prohibition of billboards from Oldtown is an abuse of the police power because it has no relation to the public health, security, general welfare, and morals in the project area.

## A.

Appellants' claim that the City did not follow proper procedures in enacting the ordinance rests on their contention that the prohibition of off-premises advertising in Oldtown is a zoning change; therefore, they claim the procedures for enacting zoning laws should have been followed. These procedures differ from those that were followed in enacting the ordinance primarily with respect

to notice requirements. Prior to the required public hearing on the Oldtown Renewal Plan, notice of such hearing was given, pursuant to the statutory scheme for approval of urban renewal plans, by posting signs in the area involved "at least ten (10) days prior to the hearing and by publication once a week for two consecutive weeks in a newspaper of general circulation . . . ." See Ordinance No. 152, § 25 (d), approved June 28, 1968. A zoning change requires a public hearing and "at least fifteen days' notice of the time and place of such hearing . . . published in an official paper, or a paper of general circulation . . . ." Maryland Code (1957, 1970 Repl. Vol.), Art. 66B, § 2.04. Appellants argue that failure to follow the latter procedure renders the sign prohibition provision of the ordinance invalid.

The Oldtown Urban Renewal Plan, as approved by the Oldtown Urban Renewal Ordinance, is first and foremost, as its name indicates, an urban renewal plan. It was properly enacted, according to statutory requirements. That zoning changes are contemplated in the renewal area does not convert the ordinance into a zoning ordinance. The statutory scheme for enacting urban renewal ordinances recognizes the distinction between urban renewal and zoning by providing that "Any change in the Zoning Ordinance embodied in a Renewal Plan . . . shall be approved by ordinance in accordance with the procedural requirements of Article 66-B of the Annotated Code of Maryland (1957 Edition) . . . ." Ordinance No. 152, § 25 (d). This two-step process, enactment of an urban renewal plan pursuant to notice requirements of Ordinance No. 152 *and* amendment of the Zoning Ordinance, if necessary, pursuant to Art. 66B, assures that the urban renewal scheme will not be utilized to enact zoning changes.

"The very essence of zoning is territorial division according to the character of the land and the buildings, their peculiar suitability for particular uses, and uniformity of use within the zone." *Heath v. Mayor & City Council of Baltimore,* 187 Md. 296, 305, 49 A. 2d 799, 804 (1946). Although it is within the scope of the zoning power to

regulate signs, *see* Art. 66B, § 2.01; *City of Baltimore v. Mano Swartz,* 268 Md. 79, 299 A. 2d 828 (1973), not every sign regulation is a zoning change. The Oldtown ordinance sets sign standards for the Oldtown renewal area, one which encompasses a variety of zones. Its standards apply only in Oldtown, not uniformly throughout similarly zoned areas elsewhere in the city. This regulation is keyed to the project area, not to a zone. It is a rehabilitation standard applicable to the renewal community and not a zoning change. Adherence to the procedures mandated by Art. 66B was not required for its validity.

## B.

The Highway Beautification Act, 23 U.S.C. § 131, provides that each State shall develop "effective control" of billboards located within 660 feet of the right-of-way of federal system highways and that "[j]ust compensation . . . be paid upon the removal of any outdoor advertising sign, display, or device lawfully erected under State law." Section 131 (g). As part of its plan of "effective control," Maryland limits outdoor advertising along the interstate and primary system to, *inter alia,* on-premises advertising and to billboards located within commercial and industrial areas. Code (1957, 1976 Cum. Supp.), Art. 89B, § 250 *et. seq.*

Two of Donnelly's signs, those located at 405 N. Exeter Street and at 420 Ensor Street, are within 660 feet and visible from Orleans Street, also known as U.S. Route 40. Appellants contend that they should be compensated for the removal of these signs because that portion of Route 40 is a part of the federal primary system.[1] The City seeks removal of the two signs pursuant to the Oldtown ordinance and not because the billboards are within 660 feet of Route 40. Their proximity to a part of the federal highway system is coincidental and does not prohibit the City from ordering the uncompensated removal of the signs under its police power. *See Markham Advertising Co. v. State,* 73 Wash. 2d 405, 439

---

1. It is not clear from the record whether that portion of U.S. Route 40 adjacent to Oldtown is within the ambit of the federal Act's provisions.

P. 2d 248 (1968), *appeal dismissed for want of a substantial federal question*, 393 U. S. 316, 89 S. Ct. 553, 21 L.Ed.2d 512 (1969). The Highway Beautification Act does not preempt the municipality's police power. *Art Neon Co. v. City and County of Denver*, 488 F. 2d 118 (10th Cir. 1973), *cert. denied*, 417 U. S. 932, 94 S. Ct. 2644, 41 L.Ed.2d 236 (1974); *Markham Advertising Co. v. State, supra.*

The Highway Beautification Act does not require removal of these signs for other reasons. The Act permits billboards within 660 feet of the highway system in areas "which are zoned industrial or commercial under authority of State law . . . ." Section 131 (d). The state statute prohibits outdoor advertising along the federal highway system "except in zoned . . . commercial and industrial areas within this State . . . ." Art. 89B, § 252. It is undisputed that the billboards located at 405 N. Exeter Street and at 420 Ensor Street are within a commercial or industrial zone. It is thus clear that these signs are not being removed pursuant to the Highway Beautification Act since they would be permissible under the Act's provisions.

### C.

Appellants next claim that allowing the City to eliminate billboards — and the mix of commercial, political, and charitable messages that áppear on them — throughout Oldtown "effectively suspend[s] the First Amendment in Baltimore." By prohibiting this medium of communication they contend that a vital source of information for Oldtown residents and visitors will be unconstitutionally suppressed.

The advertisements placed on Donnelly's billboards are entitled to some protection by the First Amendment, whether they be of a commercial, political, or charitable nature. *See Va. Pharmacy Bd. v. Va. Consumer Council*, 425 U. S. 748, 96 S. Ct. 1817, 48 L.Ed.2d 346 (1976). The Supreme Court, however, recently stated in *Young v. American Mini Theaters*, 427 U. S. 50, 68, 96 S. Ct. 2440, 2451, 49 L.Ed.2d 310, 325 (1976):

> "the content of a particular advertisement may determine the extent of its protection. A public

rapid transit system may accept some advertisements and reject others [citing *Lehman v. City of Shaker Heights*, 418 U. S. 298, 94 S. Ct. 2714, 41 L.Ed.2d 770 (1974)]. A state statute may permit highway billboards to advertise businesses located in the neighborhood but not elsewhere [citing *Markham Advertising Co. v. State, supra*] . . . ."

One question before the Court in *Young* was whether a zoning ordinance prohibiting an adult movie theater within 1,000 feet of another such establishment and within 500 feet of a residential area violated the First Amendment. The Court held that it did not because adult movie theaters were not totally suppressed, only dispersed, and because the ordinance was not aimed at speech directly but at the secondary effect of contributing to neighborhood blight.

The situation before us is similar. Billboards are prohibited from Oldtown, but they are not altogether eliminated in the city. On the contrary, Donnelly concededly is now acquiring new locations there. The ordinance is not directed at offensive speech on the billboards, for all messages, whatever their content, are banned (except, of course, those advertising the premises on which they are located). The prohibition is directed only at the secondary effect the billboards have on neighborhood blight and deterioration.[2]

A government regulation which touches upon First Amendment rights, as does the Oldtown ordinance, is permissible "if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is

---

2. In this regard, the Oldtown ordinance differs from the ordinance overturned in Erznoznik v. City of Jacksonville, 422 U. S. 205, 95 S. Ct. 2268, 45 L.Ed.2d 125 (1975), a case on which appellants rely heavily. There the City barred the showing of pornographic movies at drive-in theaters visible from the street primarily to protect its citizenry from exposure to unwanted, "offensive" speech. The secondary effect involved, impact on traffic, would be caused by any open-air theater, not only by one displaying nudity. Had Jacksonville barred all open-air theaters in its efforts to eliminate traffic distractions, as the City has barred all off-premises advertising in Oldtown, it is likely that no First Amendment challenge would have been mounted.

unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U. S. 367, 377, 88 S. Ct. 1673, 1679, 20 L.Ed.2d 672, 680 (1968). The sign prohibition provision of the Oldtown ordinance meets this four-pronged test. The City is authorized to undertake urban renewal projects for the purpose of removing slums and blight. Md. Const., Art. XI-B; Balto. City Charter (1964 Rev., as amended), Art. II (15). The prevention of blight and deterioration is an important governmental interest. *Berman v. Parker*, 348 U. S. 26, 75 S. Ct. 98, 99 L. Ed. 27 (1954). That interest is unrelated to the suppression of free expression and is no greater than is essential. It applies only in the urban renewal area; billboards are permissible in other parts of the city. Accordingly, we find that the ordinance does not violate First Amendment rights.

### D.

Appellants also challenge the ordinance on equal protection grounds. Because neither fundamental rights nor suspect classifications are involved, only a rational relationship to a permissible state objective need be shown. *New Orleans v. Dukes*, 427 U. S. 297, 96 S. Ct. 2513, 49 L.Ed.2d 511 (1976); *Massachusetts Bd. of Retirement v. Murgia*, 427 U. S. 307, 96 S. Ct. 2562, 49 L.Ed.2d 520 (1976); *Governor of the State of Maryland v. Exxon Corp.*, 279 Md. 410, 372 A. 2d 237 (1977). As to appellants' claim that the distinction in Oldtown between on- and off-premises advertising violates equal protection, we think that *Railway Express Agency v. New York*, 336 U. S. 106, 69 S. Ct. 463, 93 L. Ed. 533 (1949), is dispositive. There, the Supreme Court upheld a New York City traffic regulation prohibiting vehicles from carrying any commercial messages other than those advertising the business of the vehicle's owner. In concurrence, Mr. Justice Jackson articulated the rationale we find persuasive in this case as well:

"I think the answer has to be that the hireling may be put in a class by himself and may be dealt

with differently than those who act on their own. . . . It is . . . because there is a real difference between doing in self-interest and doing for hire, so that it is one thing to tolerate action from those who act on their own and it is another thing to permit the same action to be promoted for a price." 336 U. S. at 115-16, 69 S. Ct. at 468, 93 L. Ed. at 541-42.

As to appellants' contention that billboards are permitted in other areas zoned similarly to Oldtown, the fact that Oldtown is an urban renewal area, and other parts of the city are not, sufficiently justifies the Oldtown sign prohibition. *See R. S. Constr. Co. v. City of Baltimore,* 269 Md. 704, 309 A. 2d 629 (1973); *Maryland Mort. & Inv. Co. v. State,* 25 Md. App. 8, 332 A. 2d 675, *cert. denied,* 275 Md. 753 (1975), where housing standards in the Upton urban renewal area, higher than those applicable in non-urban renewal areas of the city, were upheld against attack on equal protection grounds.

### E.

Finally, appellants contend that it is an abuse of the City's police power to prohibit off-premises advertising unless there has been a showing that the prohibition is related to the public health, security, general welfare, and morals. It is their belief that the regulation rests solely on aesthetic grounds, which, by themselves, are claimed to be insufficient. *See City of Baltimore v. Mano Swartz, supra.*

The ordinance was enacted for the purpose of removing slums and blight from the city and is presumed constitutional. *City of Balto. v. Charles Center Parking,* 259 Md. 595, 271 A. 2d 144 (1970). Michael Calvert, a planner involved in the development of the Oldtown Plan, testified that the sign regulation was included because the existence of billboards would inhibit potential homeowners from moving into the community and would discourage new shops and businesses from relocating into Oldtown. He said that the blighting influence of such signs would counteract renovation and renewal efforts. These are not solely

aesthetic grounds. Another consideration was the overwhelming effect of the billboards in this historically significant area.[3] According to one of the plans drawn for Oldtown, the sign regulation, along with other rehabilitation standards, was "generated from a recognition of the inherent architectural and urbanistic qualities which characterize the original buildings, individually and collectively . . . ." We have previously recognized that preservation of architecturally or historically significant areas is a valid exercise of the police power. *See City of Baltimore v. Mano Swartz, supra; Cochran v. Preston,* 108 Md. 220, 229, 70 A. 113, 114 (1908); *Garrett v. Janes,* 65 Md. 260, 3 A. 597 (1886). We think the record shows a valid public purpose and significant governmental interest in the elimination of all off-premises signs in Oldtown. *See Master Royalties v. Balto. City,* 235 Md. 74, 200 A. 2d 652 (1964).

Appellants complain that if the sign prohibition is a valid exercise of the police power, it constitutes a taking, for which they are entitled to compensation. Neither party is, however, deprived of all beneficial use of its property. Donnelly can relocate its structures. All but one have been fully amortized for tax purposes prior to the passage of the ordinance. There was testimony that the Flaccomios could use their land for a parking lot. As long as there is some reasonable use for the properties, that they may be less valuable and the owners may suffer some loss in revenue is not controlling. *Grant v. City of Baltimore,* 212 Md. 301, 129 A. 2d 363 (1956). Appellants claim that the Supreme Court has disapproved of phase-out periods, like that in the Oldtown ordinance, in *Almota Farmers Elevator & Whse. Co. v. United States,* 409 U. S. 470, 93 S. Ct. 791, 35 L.Ed.2d 1 (1973). That case involved valuations in eminent domain proceedings; it is not applicable in the present context. *See Art Neon Co. v. City and County of Denver, supra.* Phase-out periods have been held to be appropriately employed in the exercise of the police power. *Eutaw*

---

**3.** Oldtown, originally called Jones Town, developed over 200 years ago as Baltimore City expanded outward from the harbor. It was a trade and commerce center on the route between Baltimore and Philadelphia.

*Enterprises v. Balto. City,* 241 Md. 686, 217 A. 2d 348 (1966); *Grant v. City of Baltimore, supra.*

Although the lower court ruled adversely to appellants on each of the questions raised in the case, its decree simply "dismissed" the bill of complaint without a declaration of the rights of the parties with respect to the subject matter of the suit, as required by the Uniform Declaratory Judgments Act. *See* Code (1974) Courts and Judicial Proceedings Article, § 3-401 *et seq.; Savings Bank v. Bank Comm'r,* 248 Md. 461, 237 A. 2d 45 (1968). We shall therefore vacate the decree dismissing the bill of complaint and remand the case to the lower court for the entry of a decree declaring the rights of the parties in accordance with the views herein expressed.

> *Decree vacated; case remanded for the entry of a decree in conformance with this opinion; costs to be paid by appellants.*