Marshall FRUMER, Joyce Caplan
and Joan Johnston

v.

CHELTENHAM TOWNSHIP, Board of
Commissioners of Cheltenham Town-
ship, c/o Robert J. Hannum, President
and Nicholas D. Melair, Jr.

Civ. A. No. 82–3295.

United States District Court,
E. D. Pennsylvania.

Sept. 3, 1982.

Michael Etkin, Frumer & Etkin, Philadel-
phia, Pa., for plaintiffs.

Gilbert High, High, Swartz, Roberts &
Seidel, Norristown, Pa., for defendants.

## MEMORANDUM AND ORDER

DITTER, District Judge.

This case comes before the court on a
motion for a preliminary injunction to have
a local municipality's sign ordinance de-
clared unconstitutional as an invalid restric-
tion on free speech. Ordinance 1536,
amending section 25 of the Cheltenham
Township, Pennsylvania, Sign Code,[1] states
in pertinent part: "No temporary sign shall
be affixed to utility poles, street signs or
any other structures within the rights-of-
way of public streets or highways within
the Township of Cheltenham." Plaintiffs
assert that because they are prohibited
from posting political campaign signs with-
in the rights-of-way in Cheltenham, ordi-
nance 1536 violates their right to freedom
of speech under the First and Fourteenth
Amendments to the United States Constitu-
tion. For the reasons that follow, the mo-
tion for preliminary injunction will be re-
fused.

1. Cheltenham Township, Pa., Ordinance 939
(June 9, 1959) as amended by Ordinance 1536

(March 16, 1982).

Plaintiffs Marshall Frumer, Joyce Caplan, and Joan Johnston are property owners, residents, and registered voters of Cheltenham Township, Pennsylvania. Additionally, Marshall Frumer is the Democratic candidate for the 154th Pennsylvania legislative district which encompasses, *inter alia*, Cheltenham Township; Joyce Caplan is a member of the Cheltenham Democratic Committee and co-chairman of the "Frumer for Legislative Campaign Committee;" and Joan Johnston is co-chairperson of the Cheltenham Democratic Party. Plaintiffs contend they have supported political candidates by posting signs on utility polls in the past, and desire to do so in the future.[2] Because section 30 of the Cheltenham Sign Code imposes penalties for violation of the code,[3] plaintiffs refrained from posting political signs on utility poles during the spring, 1982, primary election campaign, and unless the court declares the ordinance unconstitutional, plaintiffs will refrain from similarly posting signs during the campaign preceding the November 2, 1982, election. Defendants are Cheltenham Township, the township board of commissioners (board), Robert J. Hannum, president of the board, and Nicholas J. Melair, Jr., township manager. Ordinance 1536 was duly enacted by the board on March 16, 1982.

Because a request for a preliminary injunction appeals to the equitable side of the court's power, a strong showing is necessary to warrant relief.

The prerequisites for granting a preliminary injunction are that the plaintiff[s] . . . [have] no adequate remedy at law and will suffer immediate, irreparable harm if relief is not granted, plaintiff[s] . . . [have] a reasonable probability of success on the merits, the harm inflicted on the defendant[s] if the injunction is granted does not outweigh the harm to the plaintiff[s] if relief is denied, and the injunction does not do disservice to the public.

*Florida Coin Exchange v. Film Corporation of America*, 530 F.Supp. 50, 51 (E.D.Pa. 1981), *aff'd mem.* 688 F.2d 820 (3d Cir. 1982), citing *Eli Lilly and Co. v. Premo Pharmaceutical Laboratories, Inc.*, 630 F.2d 120, 136 (3d Cir. 1980); *Continental Group, Inc. v. AMOCO Chemicals Corp.*, 614 F.2d 351, 356–57 (3d Cir. 1980). Plaintiffs contend ordinance 1536 is unconstitutional. Therefore, my inquiry necessarily must concentrate on whether plaintiffs have a reasonable likelihood of success on the merits.[4]

It is undisputed that even pure political speech, which is entitled to the highest First Amendment protection, "may be subject to reasonable time, place, and manner regulations that are content-neutral, serve a significant governmental interest, and that leave open ample alternative channels for communication of the informa-

---

**2.** Of course, Marshall Frumer alleges that he intends to promote his candidacy by posting signs on utility polls.

**3.** Section 30 of the Cheltenham Sign Code states in its entirety:

Section 30. Penalties. Any person violating any of the provisions of this Ordinance shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not exceeding One Hundred Dollars ($100.00). Each day such violation is committed, or permitted to continue, shall constitute a separate offense and shall be punishable as such hereunder.

**4.** Because plaintiffs challenge the constitutional validity of an ordinance, it cannot be disputed that they have no adequate remedy at law. Additionally, courts have recognized that any infringement of First Amendment freedom constitutes irreparable injury. *Elrod v. Burns*, 427

U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Lewis v. Kugler*, 446 F.2d 1343, 1350 (3d Cir. 1971); *A Quaker Action Group v. Hickel*, 421 F.2d 1111, 1116 (D.C.Cir.1969); *Lewis v. Delaware State College*, 455 F.Supp. 239, 251 (D.Del.1978). Moreover, if the ordinance violates the First Amendment rights of plaintiffs, an injunction prohibiting enforcement undoubtedly would be in the public interest. Nonetheless defendants contend the preliminary injunction should be refused because plaintiffs are guilty of laches. See *Skehan v. Board of Trustees of Bloomsburg State College*, 353 F.Supp. 542, 543 (M.D.Pa.1973). This argument is meritless. First, there is nothing unreasonable about a four and one-half month delay between the enactment date and the filing of this action. Second, defendants have not demonstrated how they have been prejudiced by the delay.

**1294**

tion."[5] *American Future Systems, Inc. v. The Pennsylvania State University*, 688 F.2d 907, 915 (3d Cir. 1982). See *Consolidated Edison Co. of New York, Inc. v. Public Service Commission of New York*, 447 U.S. 530, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209, 95 S.Ct. 2268, 2272, 45 L.Ed.2d 125 (1975); *Baldwin v. Redwood City*, 540 F.2d 1360, 1365 (9th Cir. 1976). Regulations infringing on a private person's First Amendment rights, however, are subject to a heavy presumption against constitutional validity. *Rosen v. Port of Portland*, 641 F.2d 1243, 1247 (9th Cir. 1981). Moreover, it is the government's burden to prove the constitutionality of the regulation. *Consolidated Edison, supra,* 100 S.Ct. at 2334.

To determine whether ordinance 1536 is constitutional, I must analyze the facts on the basis of the test enunciated by the Supreme Court: content-neutrality; significant government interest; and availability of alternative channels of communication. *Consolidated Edison, supra; American Future Systems, supra.* Additionally, I must determine whether the regulation is narrowly drawn or subject to a narrowing construction. *Erznoznik, supra,* 422 U.S. at 216; 95 S.Ct. at 2276; *Orazio v. Town of North Hempstead*, 426 F.Supp. 1144, 1148 (E.D.N.Y.1977).

*Content—Neutral*

On its face, ordinance 1536 is content-neutral because it neither differentiates among the various types of speech nor prohibits signs based on content. Ordinance 1536 applies to all temporary signs irrespec-

tive of content. Plaintiffs, however, contend that because the debate at pre-enactment public hearings concentrated primarily on political signs, the ordinance is directed towards such signs, and therefore, is not content-neutral. Additionally, plaintiffs argue the timing of enactment, six weeks prior to the primary election, supports an inference that the township intended to ban this method of political speech. Plaintiffs' position is without merit. Initially, it must be noted that most debate at the public hearings was initiated by plaintiff Frumer or others with political interests who questioned the constitutionality of the ordinance. Therefore, neither the board of commissioners nor the drafters of the ordinance were responsible for the content of the public debate. Second, Nicholas D. Melair, Jr., township manager, testified that prior to the public hearings, the board sent special notice of the proposed ordinance to some 50 civic organizations and non-profit groups because of the possible adverse effect the ordinance would have on them. Therefore, it is obvious the ordinance was not directed solely at political speech. Finally, the fact that the ordinance was enacted six weeks prior to a primary election is of no significance in view of the staff consideration, notices, and public debate that came after it was originally proposed in October, 1981. For these reasons, I conclude ordinance 1536 is content-neutral.

*Significant Government Interests*

Defendants assert the ordinance not only is a valid exercise of Cheltenham's municipal power, but is designed to promote traffic safety and community aesthetics. Specifically, defendants contend sign-lined streets detract from the appearance of the community,[6] divert the attentions of driv-

---

5. Examples of cases upholding government regulation of speech are as follows: *Lehman v. City of Shaker Heights*, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) (upholding ban on political advertisements on rapid transit vehicles); *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (upholding antinoise ordinance while on grounds adjacent to public school); *Kovacs v. Cooper*, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (upholding regulation of sound trucks); *State*

*v. Lotze*, 92 Wash.2d 52, 593 P.2d 811, appeal dismissed, 444 U.S. 921, 100 S.Ct. 257, 62 L.Ed.2d 177 (1979) (upholding ban on highway billboards, adequate alternatives for political speech available elsewhere); *Donnelly Advertising Corp. v. Baltimore*, 279 Md. 660, 370 A.2d 1127 (1977) (ban on signs in limited area of city upheld).

6. Defendants also assert that temporary signs usually remain posted long after the expiration of their usefulness. The temporary signs decay

ers, and obstruct the driver's view of traffic and pedestrians at intersections.[7] Contrariwise, plaintiffs maintain the prohibitions of the ordinance are not causally related to the significant state interests forwarded by defendants. *John Donnelly & Sons v. Campbell*, 639 F.2d 6, 11 (1st Cir. 1980), *aff'd mem.*, 453 U.S. 916, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981); *Ross v. Goshi*, 351 F.Supp. 949, 953 (D.Hawaii 1972); *State v. Miller*, 83 N.J. 402, 416 A.2d 821, 827–28 (1980). Accordingly, plaintiffs assert I must declare the ordinance unconstitutional and enjoin defendants from enforcing it. Because common sense dictates that the government interests are causally related to the prohibitions of the ordinance, I reject plaintiffs' position.[8] Traffic safety and community aesthetics have been held to be significant government interests which can justify reasonable time, place, and manner regulations of speech protected by the First Amendment. *John Donnelly & Sons v. Campbell*, supra, 639 F.2d at 10–12; *Orazio, supra*, 426 F.Supp. at 1148; *State v. Lotze, supra*, 593 P.2d at 813–15; *Donnelly Advertising Corp. of Maryland v. Baltimore*, 279 Md. 660, 370 A.2d 1127, 1132 (1977). It is suggested, however, that drivers can avoid visual distractions by merely turning away. *Baldwin v. Redwood City, supra*, 540 F.2d at 1367. That is not always true. *Erznoznik, supra*, 422 U.S. at 209, 95 S.Ct. at 2272–73; *Lehman v. City of Shaker Heights, supra*, 418 U.S. at 308, 94 S.Ct. at 2719 (Douglas, J., concurring). It cannot be disputed that signs are distracting. Their whole purpose is to call attention to themselves and to the extent that they are successful, a motorist's powers of observation are diverted from those things which he may injure or which may bring injury to him. A sign that is large enough to be seen at one glance may also be large enough to conceal a hazard. A small sign may get more than a glance just because it needs more attention to be understood. Usually, temporary signs rely on the impact of multiple exposures to convey their message, proliferating without seeming limit in the process. To suggest that one may simply turn away from the impact of temporary signs is to suggest that one may do that which the sign-placer has resolved one shall not do. Neither pedestrians nor drivers can turn away if there are three-four signs on every pole on both sides of the street. To argue that one need not look is to contend one should walk or drive carelessly. Furthermore, it cannot be disputed that temporary signs posted on traffic signs which either detract attention from them, or worse, conceal them, are hazardous both to drivers and pedestrians. Therefore, I find the ordinance promotes significant government interests which are causally related to achievement of stated goals.

*Alternative Methods of Political Communication*

Plaintiffs argue that by banning political signs within rights-of-way in Cheltenham, ordinance 1536 prohibits them from engaging in a unique method of political speech which is not fungible with other modes of communication. *Schneider v. State of New Jersey*, 308 U.S. 147, 60 S.Ct. 146, 152, 84 L.Ed. 155 (1939); *Baldwin v. Redwood City, supra*, 540 F.2d at 1368; *State v. Miller, supra*. Plaintiffs assert the availability of leaflets, direct mail, radio, television, newspapers, bumper stickers, door-to-door campaigning, support group meetings, or posters in public buildings, shopping centers, and on private property, cannot substitute for posting signs within the right-of-way.

while posted, eventually fall to the ground creating a litter problem and, therefore, further detract from the appearance of the community.

**7.** Another safety problem occurs when a banner which spans the street becomes detached at one end and falls into the street.

**8.** The dicta of *John Donnelly & Sons v. Campbell, supra*, that empirical data is necessary to show the relationship between the restriction and state interest, is distinguishable from this case. Donnelly involved a restriction on posting billboards within six hundred sixty feet of interstate highways. The court concluded that the prohibition would have little effect on *highway* safety. This case is different because we are concerned with traffic safety on local streets. There are many more off and on street distractions to a driver on local streets than on a highway.

Although I agree with plaintiffs' contention that posting political signs in the rights-of-way is both an inexpensive and effective method of political speech, plaintiffs also may engage in some of the above activities within the rights-of-way. For example, plaintiffs may campaign, distribute leaflets, bumper stickers,[9] and other literature as they walk within the rights-of-way.[10] Furthermore, ordinance 1536 does not prohibit posting temporary signs in all places within the rights-of-way. Rather, ordinance 1536 prohibits within rights-of-way temporary signs which are "affixed to utility poles, street signs or any other structures." Section 2(9) of the Cheltenham Township Sign Code defines "structures" as follows:

> "Structure" shall mean a combination of materials assembled at a fixed location to give support or shelter, such as a building, bridge, trestle, tower, framework, retaining wall, tank, swimming pool, tunnel, tent, stadium, reviewing stand, platform, bin, fence, sign, flagpole, or the like, including any construction of any kind affecting or endangering life or property.

Because of the definition given "structure," I construe the ordinance as at least permitting the posting of temporary political signs on trees, within the rights-of-way in Cheltenham. See *Erznoznik, supra*, 422 U.S. at

**9.** This observation does not even address the fact that cars with bumper stickers travelling the rights-of-way continually disseminate a political message within the rights-of-way.

**10.** Township Manager Melair testified that the boundary of the rights-of-way in Cheltenham Township extend at least to the edge of the sidewalk furthest from the street.

The Cheltenham Township Subdivision Ordinance of 1974 defines right-of-way as follows:

A right-of-way is a strip of land occupied or intended to be occupied by a street, alley, crosswalk, sanitary or storm sewer, stream, drainage ditch, or for other special use. Those rights-of-way that involve maintenance by the Township of Cheltenham shall be dedicated to public use by the subdivider of the plan on which such rights-of-way are established.

Cheltenham Township Subdivision Ordinance of 1974, Cheltenham Township Code, Chapter 17, § 101(U) (1974). Black's Law Dictionary *defines* right-of-way *as follows:*

216, 95 S.Ct. at 2276 ("state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction"). In view of the fact that the ordinance permits posting within the rights-of-way *except* on utility poles, traffic signs, and other structures, both alternative and identical methods of communication are available to plaintiffs. Accordingly, I need not reach the question whether the alternative modes of communication offered by defendants are fungible with the methods at issue here.[11]

*Conclusion*

Because ordinance 1536 is content-neutral, furthers significant government interests, and leaves untouched numerous methods of political communication, I find it to be a valid time, manner and place regulation.

> a legislative judgment that ... [temporary signs] are traffic hazards [and harm community aesthetics] is not manifestly unreasonable and should not be set aside. We likewise hesitate to disagree with the accumulated, common-sense judgments of local lawmakers ... that ... [temporary signs] are real and substantial hazards to traffic safety [and community aesthetics]. There is nothing here to suggest that these judgments are unreasonable....

> Term "right of way" sometimes is used to describe a right belonging to a party to pass over land of another...
>
> .    .    .    .
>
> it is only an easement; and grantee acquires only right to a reasonable and usual enjoyment thereof with owner of soil retaining rights and benefits of ownership consistent with the easement.

Black's Law Dictionary 1191 (5th ed. 1981).

**11.** This also lends support to my conclusion that ordinance 1536 is narrowly drawn. Although the ability of citizens to post on trees may harm community aesthetics and endanger traffic safety, thereby weakening the causal relationship between the ordinance and its objectives, so long as the ordinance meets the test for constitutionality, I must defer to the judgment of the enacting body. *Kovacs v. Cooper, supra*, 336 U.S. at 97, 69 S.Ct. at 458–59 (Frankfurter, J., concurring).

We would be trespassing on one of the most intensely local and specialized of all municipal problems if we held that this regulation had no relation to the traffic problem [or aesthetics] of ... [Cheltenham Township]. It is the judgment of the local authorities that it does have such a relation. And nothing has been advanced which shows that to be palpably false. [*Railway Express Agency, Inc. v. People of New York*, 336 U.S. 106, 109, 69 S.Ct. 463, 465, 93 L.Ed. 533 (1949)].

*Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 2893, 69 L.Ed.2d 800 (1981) (footnotes omitted).

Accordingly, ordinance 1576 is constitutional and a valid exercise of Cheltenham Township's municipal power.