468 A.2d 1369

**Harry L. JOYCE, Jr., et ux.**

v.

**Thomas N. TEMPLETON et ux.**

**No. 232, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Jan. 6, 1984.

Certiorari Denied May 28, 1984.

Cornelius D. Helfrich, Bel air, with whom were Helfrich & Tamburello, P.A., Bel air, on the brief, for appellants.

No brief or appearance by appellees.

Argued before LISS, BISHOP and GARRITY, JJ.

LISS, Judge.

Harry L. Joyce, et ux. are the appellants from a decree entered in the Circuit Court for Harford County purporting to declare the riparian rights of the appellants and those of Thomas N. Templeton, et ux., the appellees, as adjoining property owners on a bulkheaded cove, *vis-à-vis* the water adjacent to their respective bulkheads.

The appellants (Joyce) and the appellees (Templeton) own adjacent land on a cove in Joppatowne, Maryland known respectively as Lots 26 and 28 of Block 21 of Part 33 of Rumsey Island. Lot 26 (Joyce) has 57.5′ of bulkhead and Lot 28 (Templeton) has 25′ of bulkhead. They are located at right angles to each other on a corner of a man-made cove 120′ wide.

NOT TO SCALE:

Several times between 1977 and 1981 Templeton approached Joyce about coordinating plans in anticipation that both would be building piers or docks adjacent to their bulkheads. Finally Joyce told Templeton that any dock Templeton constructed would infringe on Joyce's property rights and he could not agree to allow Templeton to construct any dock there.

Eventually, on June 16, 1981, Templeton applied to the Army Corps of Engineers for permission to construct a pier. Joyce applied to build a pier in July, 1981. Templeton constructed his pier in August, 1981; Joyce, in 1982. The relationship of the two piers is approximately as shown:

On August 28, 1981, Joyce filed suit in the Circuit Court for Harford County, seeking to enjoin both the construction of Templeton's pier and the placement of any boat adjacent thereto, alleging intrusion upon waters to which Joyce claims exclusive riparian rights, and thereby constituting the commission of a nuisance and trespass. In addition, Joyce asked the Court to define and declare the parties' riparian rights; *i.e.,* their rights to the use of the navigable waters adjacent to their respective bulkheads.

The matter was heard before the trial judge, Brodnax Cameron, Jr., on November 9, 1982. After hearing the testimony of both parties,[1] the chancellor concluded that the *status quo* effectively governed the rights of the parties,

---

1. In addition, there were diagrams, photographs, blueprints, and Army Corps of Engineers reports entered into evidence for the chancellor's consideration.

thereby ruling in favor of Templeton's continued use of his dock as constructed.

An order was submitted to the court by Joyce's attorney which declared that each party could maintain his dock in its current position. The order also contained a provision that the surrounding water be apportioned by extending the parties' mutual property line to the center of the cove and prohibiting either party from using the docks in a manner that impinged on the other's riparian area. In signing the order, the chancellor struck from the proposed decree submitted to him the latter provision which would have been directly contrary to the conclusion he had expressed at the end of the case.

From that order Joyce appealed to this Court, contending that the decree as signed did not answer the essential question presented for disposition, *i.e.*, each party's riparian rights as adjoining property owners on a bulkheaded cove.

Templeton declined to participate in the appeal, filed no brief, and did not appear for argument.

The sole question on appeal is simply whether the chancellor's order adequately resolved the issue presented for disposition in this case.

If this corner riparian area in question were to be apportioned according to appellant's proposal, by extension of the common property line to the center of the cove, it is obvious that appellee's dock with boat attached would transgress into appellant's riparian area. In addition, appellant could not take a boat to the inside of his L-shaped dock without violating appellee's exclusive riparian area. The overall effect would have been to severely limit Templeton's use of the area and enhance that of Joyce. As the chancellor noted in his opinion:

> Basically, [Templeton] is—has no other option that I can see. If he extended his pier perpendicular to the shore line, it would make matters worse, not better. The only thing, really, that could be done by the Defendant would be to remove the pier, which I've declined to do.

Now, [Joyce] could have placed his pier somewhat to the northeast, that is, up towards the neighbor on the other side, but apparently felt that zoning regulations prevented that.

So when it comes down to the bottom line in the present situation, [Joyce] can tie up two boats and can own one pier, [Templeton] can tie up one boat and own one smaller pier. Now, that seems to me a perfectly fair arrangement when it's contrasted with the alternative, which would be to permit [Joyce] to tie up three boats and keep his pier and [Templeton] to tie up one boat and have no pier.

\* \* \* \* \* \*

So it's a—I can't conceive of an arrangement which would be more equitable than the *present one.*

So if you, Mr. Stahl, will present me with an order, I'll sign one establishing—declaring *these* to be the rights of the parties.

Stated succinctly, the chancellor concluded that the *status quo* provides the best available solution to the parties' equitable rights in navigable riparian waters adjacent to their adjoining properties.

 The courts should declare rights where possible. *See Donnelly Advertising Corporation of Maryland v. City of Baltimore,* 279 Md. 660, 370 A.2d 1127 (1977). Indeed, if the questions are validly before the court, it must pass upon and adjudicate the issues raised. *See Dart Drug Corp. v. Hechinger Co., Inc.,* 272 Md. 15, 320 A.2d 266 (1973).

 In the instant case, appellants argue that since no absolute boundary was set by the chancellor, the issue raised was not adjudicated. We do not agree. In *Mutual Chemical Co. of America v. Mayor and City Council of Baltimore,* 33 F.Supp. 881, *modified Mayor and City Council of Baltimore v. Crown Cork & Seal Co.,* 122 F.2d 385 (D.C.Md.1941), it was held:

[I]t is necessary first to consider what are the established legal principles, or rules, for apportioning property owners' rights upon a bulkhead line. . . .

The following general rules for the apportionment of riparian rights are firmly established: If the shore line is straight, the riparian lines are to be extended from the divisional lines on shore into the water, perpendicular to the shore line. If, on the other hand, the shore line is concave, converging lines shall be run from the divisional shore lines to the line of navigability. *City of Baltimore v. Steamboat Co.,* 104 Md. 485, 498, 65 A. 353. If the shore lines are convex, the lines will be divergent to the line of navigability. Surveying and Boundaries, by Frank Emerson Clark, Secs. 268, 269. *However, it is self-evident that each of these rules cannot be strictly applied where irregular shore lines are involved, if all affected property owners are to be treated equitably. So, modifications have been enunciated in various State Court decisions. . . .* [Emphasis added]. *Id.,* at 887.

The Court in *Mutual Chemical Co. of America* went on to conclude that the most equitable rule to fit the given situation was the one which must be adopted, to afford *each* property owner "the fullest utilization of the respective properties." *Id.,* at 888.

In Massachusetts, in the 1849 case of *Gray v. Deluce,* 5 Cush., Mass. 9, 11–12 (1849), a similar issue was discussed:

The principal question in these cases is, in what manner the areas claimed by the parties are to be divided.

\* \* \* \* \* \*

To determine this question, a rule is to be established, whereby *all* the flats within the cove, where the flats in question are situate, may be divided amongst the coterminous proprietors.

\* \* \* \* \* \*

[N]o rule can be laid down which will be applicable to all cases. We have no doubt, however, that in all cases, it was intended, if practicable, to give to every proprietor

the flats in front of his upland of equal width with his lot at high-water mark.

But this in many cases has been found impracticable. So was the fact in the leading case of *Rust v. Boston Mill Corporation,* 6 Pick. 158. In that case the flats to be divided were within a deep cove, the mouth of which was narrow, so that it was impossible to make the division among the several proprietors by parallel lines; and from necessity the division was made by running converging divisional lines from high-water mark to the mouth of the cove, the low-water mark being without the cove. And this rule of necessity has been followed in many other cases.

So if a division were to be made of flats surrounding a headland, it would be impracticable to make a just division by parallel lines; and to give to each proprietor his due proportion of the flats, the lines of division must diverge from high-water to low-water mark.

The Massachusetts court went on to assure that a "just division [was] made of all the flats within the cove." *Id.,* at 13.

The Supreme Court of Errors of Connecticut, in *Lowndes v. Wicks,* 9 Conn. 15, 36 A. 1072, 1077 (1897), in a case not unlike that at bar, discussed the applicable rules for apportionment and concluded that:

It is the aim of these rules, as applied to the rights of adjoining riparian proprietors on an irregular shore, to give each, as far as may be, fair and reasonable opportunity of access to the channel.

In 1907, the Supreme Court of Wisconsin, discussing the application of similar divisionary rules in *Hathaway v. City of Milwaukee,* 132 Wis. 249, 111 N.W. 570, 571 (1907), stated:

the [trial] court evidently followed the rule of apportioning to each abutting proprietor such proportion of the new shore line as his ownership of the original shore line bore to the whole line on which the accretion abuts, and dividing the area to be apportioned by connecting the points

where division lines of coterminous owners intersect the original shore line and the corresponding points on the new shore line by straight lines. This process of apportionment is well recognized as a proper one to follow, unless it results in such inequalities as to make it inequitable.

\* \* \* \* \* \*

... An examination of the situation thus presented has led us to the conclusion that the apportionment under the rule followed by the trial court results in as equitable a division of this area as can practically be made in view of the quantity of the [area] to be divided and [its] ... relation ... to the riparian proprietorships.

See also, Columbia Land Co. v. Van Dusen Inv. Co., 50 Or. 59, 91 P. 469 (1907).

In his opinion, the chancellor below indicated that the case at bar was controlled by the case of Andrejak, et al. v. Shenk (Equity Case # 26948, Docket 33, Folio 153, Harford County, filed 7/19/79), an earlier dispute presenting the same question. That case turned on the pie-shaped wedges created by extending property lines to a point 60' from each bulkhead. The appellees relied upon this concept in their application to the Army Corps of Engineers. Appellants argue that given the awareness of the pie-wedge division in Andrejak and the appellees' reliance on this method of determining their right to erect their bulkhead, it was error by the trial court to refuse to extend the common property line to the midpoint of the cove. When Andrejak, however, is applied in the light of the equitable principles stated in Mutual Chemical Co. of America, supra, we find no error in the court's decision to maintain the status quo. We agree with the trial judge's reasoning as expressed in his declaration of the rights of the parties, when he said:

... Basically, what the Court is being called upon to do is make an equitable division or allocation of the rights of the parties, but it seems to have fallen into the—fallen to the Court's lot to be asked to design docking facilities that

would achieve that end. First of all, the Court is not in business to design docking facilities, and the best that can be done is make an allocation that is a reasonable one but not necessarily the best one. By my consideration of the testimony here, I can think of no alternatives that are more satisfactory than the *status quo.*

Now, [Templeton] does have the right, as a pier owner, to construct a pier, in this case a floating five by fifteen pier, along his water frontage as long as it doesn't unduly impede the exercise of the Plaintiff's rights to have his pier.

What [Joyce] seems to be asking is that the Court tell [Templeton] that he cannot have a pier at all. Now, I'm not so—Aside from the deprivation of rights, I'm not so sure that that would be a very satisfactory solution to begin with.

We do not agree with appellant's contention that the trial court failed to rule on the respective riparian rights of the parties. Their rights are clearly ascertained from the order signed by the court. If appellant desires an engineering delineation of the lines to be drawn which would encompass the court's decision, he is free to have such a projection of the lines drawn by a competent engineer and submitted to the court for its signature. Obviously, appellant could not expect the court to include in its order the projected riparian rights which the court had found to be inequitable.

JUDGMENT AFFIRMED, COSTS TO BE PAID BY APPELLANTS.